IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON for Policies Nos. PGIARK01768-01 and PGIARK01768-02, | No. 2:14-cv-01513-JLR |
| Plaintiffs, | DECLARATION OF MARTIN L. ZIONTZ |
| v. | |
| UNIVERSAL TRANSPORTATION & TRANSLATIONS, INC., a Washington for profit corporation; and HOPELINK TRANSPORTATION, a Washington non-profit corporation, | Note on Motion Calendar: March 13, 2015 |
| Defendants. | |

Martin L. Ziontz, being of adult years and competent to testify, hereby makes this declaration on the basis of personal knowledge.

1. I am counsel to Plaintiffs Certain Underwriters at Lloyd's, London.

2. Attached hereto as Exhibit 1 is a true and correct copy of Policy Number PGIARK01768-01 for policy period 2/23/13 - 2/23/14.

**PEIZER & ZIONTZ, P.S.**
1600 PACIFIC BUILDING
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104-1825
PHONE (206) 682-7700   FAX (206) 682-0721

1          3.  Attached hereto as Exhibit 2 is a true and correct copy of Policy Number

2   PGIARK01768-02 for policy period 2/23/14 - 2/23/15

3
          I make this declaration under penalties of perjury in the State of Washington.

4
          SIGNED and DATED at Seattle, King County, Washington this ___11th___ day of

5

6   February,  2015.

7

8

9

10                                        _____
                                          Martin L. Ziontz, WSBA #10959
11                                        Of Attorneys for Plaintiff Certain Underwriters
                                          at Lloyds of London
12                                        720 Third Avenue, #1600
                                          Seattle, WA 98104
13                                        (206) 682-7700
                                          Fax: (206-682-0721
14                                        ziontz@przlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARTIN L. ZIONTZ - 2
H:\9526\declaration of martin l ziontz re motion for summary judgment.wpd

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of Peizer & Ziontz, P.S. and is a person of such age and discretion as to be competent to serve papers.

It is further certified that on February 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Aric Bomsztyk        asb@bmatlaw.com

John A. Safarli      jsafarli@floyd-ringer.com

s/ Carolyn Lafferty
Carolyn Lafferty, Legal Assistant
Peizer & Ziontz, P.S.
720 Third Avenue, #1600
Seattle, WA 98104
Phone:  206-682-7700
Fax: 206-682-0721
E-mail: carolyn@przlaw.com

PEIZER & ZIONTZ, P.S.
1600 PACIFIC BUILDING
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104-1825
PHONE (206) 682-7700   FAX (206) 682-0721

Exhibit __1__

# COMMON POLICY DECLARATION
## ALLIED HEALTH CARE

**Renewal Policy #:**

PGIARK01768-00

**Policy Number**

PGIARK01768-01

**ITEM 1. NAMED INSURED AND MAILING ADDRESS:**

Universal Transportation & Translations, Inc., d/b/a UT&T
and CNG For Hire
3803 S. Warsaw St.
Seattle, WA 98118

**AGENT NAME AND ADDRESS:**

Trisha Banfill
Griffin Underwriting Services
PO Box 3867
Bellevue, WA 98009

Agent No.: 3372

**ITEM 2. POLICY PERIOD:** From: 2/23/2013 To: 2/23/2014
12:01 A.M. Standard Time at the **NAMED INSURED'S** mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage.

| Coverage Part(s) | Premium |
|---|---|
| Commercial General Liability Coverage Part (OCCURRENCE) | $INCLUDED _____ |
| Professional Liability Coverage Part (CLAIMS MADE AND REPORTED) | $INCLUDED _____ |
| **Total Policy Premium** | $4,400.00 _____ |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY,
COMPLETE THE ABOVE-NUMBERED POLICY.

| 3/14/2013 | _signature_ |
|---|---|
| (Date) | (Authorized Representative) |

# ALLIED HEALTH CARE
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

### PLEASE READ THIS CAREFULLY.

These Supplemental Declarations form a part of policy number: PGIARK01768-01 _____

| | |
|---|---|
| **LIMITS OF INSURANCE** | |
| General Aggregate Limit | $2,000,000._____ |
| Personal and Advertising Injury Limit | $1,000,000._____ any person or organization |
| Each **CLAIM** Limit | $1,000,000._____ |
| Damage to Premises Rented to **YOU** Limit | $50,000._____ any one premises |
| Medical Expense Limit | $NOT INCLUDED____ any one person |
| **DEDUCTIBLE** | |
| Coverages **A** and **B** | |
| Each **CLAIM**, including **CLAIM EXPENSE** | $ See Deductible Endorsement _____ |

**DESCRIPTION OF BUSINESS**

Form of business:
❑ Individual    ❑ Joint Venture    ❑ Partnership    ❑ Trust    x Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Business description: Non-Emergency Medical Transport
Location of all premises you own, rent or occupy: See Schedule of Locations

**NOTICE OF CLAIM**

Notice of **CLAIM** shall be given to:

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

See attached listing of forms & endorsements

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH
THE COVERAGE FORM(S) AND ENDORSEMENT(S) COMPLETE THE ABOVE-NUMBERED POLICY.

2

## ALLIED HEALTH CARE
## PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number: <u>PGIARK01768-01</u>

**RETROACTIVE DATE:** __02/23/2012_____

**LIMITS OF LIABILITY**

| | |
|---|---|
| Each **CLAIM** Limit | $1,000,000. _____ |
| Annual Aggregate Limit | $2,000,000. _____ |

**DEDUCTIBLE**
Each **CLAIM**, including **CLAIM EXPENSE**                    $2,500. _____

**NAMED INSURED'S** Profession: Non-Emergency Medical Transport

**NOTICE OF CLAIM**

Notice of **CLAIM** shall be given to:

PGI Commercial
701 Route 73 South
Suite 105, Building #2
Marlton, NJ 08053

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Forms and Endorsements Schedule

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE-NUMBERED POLICY.

# Schedule of Participating Underwriters

**Lloyd's Underwriters:**

| Syndicate Number | Pseudonym | Participation |
|---|---|---|
| 4020 | ARK | 100.00% |

4

# Schedule of Forms

Named Insured  Universal Transportation & Translations, Inc., d/b/a UT&T and CNG For Hire

Policy No:  PGIARK01768-01        Certain Underwriter's at Lloyd's, London - 1328

| Form Name | Form Edition No |
|---|---|
| Allied Health Care Common Policy Declaration (Occurrence) | PGI PL 023 0112-OCC |
| Allied Health Care Commercial General Liability Coverage Part Supplemental Declarations (Occurrence) | PGI PL 024 0112-OCC |
| Allied Health Care Professional Liability Insurance Coverage Part Supplemental Declaration | PGI PL 025 0109 |
| Listing of Forms and Endorsements Forming a Part of This Policy | PGI PL 001 0109 |
| Schedule of Participating Underwriters | Lloyd's UW 006 |
| Allied Health Care Professional Liability Insurance Coverage Part (Claims Made and Reported) | PGI PL 022 0109 |
| Allied Health Care Commercial General Liability Coverage Form (Occurrence) | PGI PL 021 0112-OCC |
| Several Liability Notice | LSW 1001 |
| A Lloyd's Privacy Policy Statement | LSW1135b |
| Cancellation Clause | NMA1331 |
| Radioactive Contamination Exclusion Clause | NMA1191 |
| Service of Suit Clause (USA) | NMA1998 |
| Deductible Endorsement | PGI PL 057 0109 |
| Loading or Unloading Definition Amendment | PGI PL 049 0109 |
| HIPAA Sublimit | PGI PL 039 0109 |
| Schedule of Locations | PGI PL 061 0109 |
| Amendatory Endorsement-Additional Exclusion | PGI PL 063 0109 |
| Biological or Chemical Materials Exclusion | NMA2962 |
| War & Civil War Exclusion Clause | NMA464 |
| Electronic Data Exclusion | NMA2915 |
| Nuclear Incident Exclusion Clause | NMA1256 |
| Seepage and Pollution Exclusion | NMA2340 |
| Sexual Misconduct Limitation Endorsement | PGI PL 060 0109 |
| War and Terrorism Exclusion | NMA2918 |
| Sanction Limitation and Exclusion Clause | LMA3100 |
| Designation of Surplus Lines Agent | PGI PL 002 |
| TCPA Exclusion | PGI PL 074 1212 |
| Amendatory Endorsement-Primary Additional Insured | PGI PL 063 0109 |
| Amendatory Endorsement-Stop Gap-Washington | PGI PL 063 0109 |

# ALLIED HEALTH CARE
## PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

**THIS IS A CLAIMS MADE AND REPORTED COVERAGE PART.** Coverage is limited to only those **CLAIMS** that are first made against **YOU** and reported to **US** during the **POLICY PERIOD** or Extended Reporting Period, if applicable, as a result of any **WRONGFUL ACT** which occurred prior to the end of the **POLICY PERIOD**. However, if the renewal policy is written by **US**, **YOU** will have sixty (60) days after the expiration date of this policy to report any **CLAIM** first made in this **POLICY PERIOD**.

## INSURING AGREEMENT

**WE** will pay **DAMAGES** which **YOU** become legally obligated to pay and **CLAIM EXPENSE** as a result of **CLAIMS** first made against **YOU** and reported to **US** in writing during the **POLICY PERIOD** or Extended Reporting Period, if applicable, provided that:

1. the **WRONGFUL ACT** giving rise to the **CLAIM** occurred on or after the **RETROACTIVE DATE** shown in the Declarations and before the end of the **POLICY PERIOD**;

2. notice of the **WRONGFUL ACT** was not given nor required to be given to any prior insurer; and

3. prior to the inception date of the first policy issued to **YOU** by **US** and continuously renewed by **US**, **YOU** had no reasonable basis to believe that such **WRONGFUL ACT** had been committed or that a **CLAIM** would be made against **YOU** alleging such **WRONGFUL ACT**.

## DEFENSE

**WE** have the right and duty to defend any suit against **YOU** seeking **DAMAGES** because of a **WRONGFUL ACT** even if any of the allegations in the suit are groundless, false or fraudulent. **WE** have the right to appoint counsel and investigate any **CLAIM** or suit. However, **WE** will not settle or compromise a **CLAIM** or suit without **YOUR** written consent. If consent is refused and **YOU** elect to contest the **CLAIM** or continue legal proceedings, then **OUR** liability for the **CLAIM** will not exceed the amount for which the **CLAIM** could have been settled, plus **CLAIM EXPENSE** incurred up to the date of **YOUR** refusal.

If the allegation(s) is excluded under this Coverage Part, there shall be no duty to defend such **CLAIM**.

**WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any suit after the applicable limits of **OUR** liability have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE**.

**WE** have the right, but no duty, to appeal any judgment.

**YOU**, except at **YOUR** own cost and for **YOUR** own account, will not:

1. make any payment;

2. admit any liability;

3. settle any **CLAIM**;

4. assume any obligation; or

5. incur any expense

without **OUR** written consent.

## SUPPLEMENTAL PAYMENTS

**WE** will pay, in addition to **OUR** Limits of Liability:

1. All costs taxed against **YOU** in any suit **WE** defend.

2. Interest only on that part of any judgment which does not exceed **OUR** Limit of Liability, which accrues after the entry of the judgment and before **WE** have paid, offered to pay, or deposited in court that part of the judgment that does not exceed **OUR** Limit of Liability.

3. Premium on appeal bonds required in any suit **WE** defend and the cost of attachment or similar bonds.

4. Up to $5,000 during the **POLICY PERIOD** in:

   a. expenditures for legal services charged by a lawyer **WE** designate; and

   b. other expenses **WE** incur in the investigation and defense of **DISCIPLINARY PROCEEDINGS**

brought against **YOU**. Notice of **DISCIPLINARY PROCEEDINGS** must be reported to **US** in writing during the **POLICY PERIOD** and must arise out of **WRONGFUL ACTS** that are otherwise covered by this Coverage Part. The **DEDUCTIBLE** will not apply to the expenditures **WE** incur under this provision.

5. Up to $200 to each of **YOU** for each day or part of the day for **YOUR** attendance at a trial, hearing, arbitration proceeding, mediation or any other Alternative Dispute Resolutions at which **WE** request **YOUR** attendance. The maximum amount payable by **US** during the **POLICY PERIOD** shall not exceed $5,000 in the aggregate. The **DEDUCTIBLE** provision of this Coverage Part will not apply to the expenditures **WE** incur under this provision.

## TERRITORY

This Coverage Part applies to **WRONGFUL ACTS** which happen anywhere in the world, provided the **CLAIM** is made and the suit is brought within the United States, its possessions and its territories or Canada.

## DEFINITIONS

Whenever used in this Coverage Part, the following words have these meanings:

1. **AUTO**—means a land motor vehicle, trailer or semi-trailer, including any attached machinery or equipment.

2. **BODILY INJURY**—means physical injury, sickness, shock, mental anguish, mental illness, emotional distress, death or disease sustained by any person.

3. **CLAIM(S)**—means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **WRONGFUL ACT**. **CLAIM(S)** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice. Notice includes, but is not limited to, service of suit, institution of arbitration proceedings, mediation or any other Alternate Dispute Resolutions.

4. **CLAIM EXPENSE**—means expenditures including, but not limited to:

   a. all expense of lawyers we are required by law to pay to defend **YOU**;

   b. costs of investigations;

   c. experts;

   d. court costs; and

   e. other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or suit.

   **CLAIM EXPENSE** does not include:

   (1) Salary, charges or expenses of **OUR** regular employees.

   (2) Payments made under the Supplemental Payments provision of this Coverage Part.

5. **DAMAGES**—means a monetary judgment, award or settlement.

   **DAMAGES** do not include:

   a. Civil or criminal fines, sanctions, restitution or penalties, whether pursuant to any civil or criminal law or statute;

   b. Amounts paid to **YOU** as fees, costs or expenses for services performed which are to be reimbursed or discharged as part of the judgment or settlement;

   c. Equitable relief, injunctive relief, declaratory relief or any other relief or recovery that is not seeking monetary judgment, award or settlement;

   d. Any fees, costs or expenses, including but not limited to claimant/plaintiff attorney fees, related to equitable relief, injunctive relief, declaratory relief or any other relief or recovery that is not seeking a monetary judgment, award or settlement;

   e. Judgments or awards arising from acts deemed uninsurable by law; or

   f. Fines, penalties or disputes over fees, deposits, commissions, or charges for goods or services or the cost of correcting, performing or repeating **PROFESSIONAL SERVICES** by **YOU** when **YOU** had the capability to correct, perform or repeat the services that generated the cost.

6. **DEDUCTIBLE**—means the amount **YOU** must pay for **DAMAGES** and **CLAIM EXPENSE**.

7. **DISCIPLINARY PROCEEDING(S)**—means any proceeding brought against **YOU** by a state or other regulatory or disciplinary official or agency to investigate charges alleging professional misconduct in performing **PROFESSIONAL SERVICES**.

8. **INFECTION**—means either:

   a. the invasion of the body by germs or viruses that reproduce and multiply, causing disease or local injury, release or poison, germ antibody reaction or virus antibody reaction in the cells; or

   b. a disease caused by the invasion of the body by germs or viruses.

9. **LOADING AND UNLOADING**—means the handling of property:

   a. after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **AUTO**;

   b. while it is in or on an aircraft, watercraft or **AUTO**; or

   c. while it is being moved from an aircraft, watercraft or **AUTO** to the place where it is finally delivered.

10. **NAMED INSURED**—means the person, entity or organization named in Item 1. of the Declarations.

11. **PERSONAL INJURY**—means injury arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e. Oral or written publication of material that violates a person's right of privacy.

12. **POLICY PERIOD**—means the period of time stated in Item 2. of the Declarations or any shorter period resulting from policy cancellation.

13. **PROFESSIONAL SERVICES**—means services performed or advice given by **YOU** for a fee, remuneration or other consideration in **YOUR** capacity as stated on the Supplemental Declarations as **NAMED INSURED'S** Profession. **PROFESSIONAL SERVICES** do not include:

    a. refusal to employ;

    b. termination of employment; or

    c. responsibilities for the day to day management of **YOUR** business.

14. **PROPERTY DAMAGE**—means:

    a. physical injury to or destruction of tangible property, including the loss of use thereof at any time resulting therefrom; or

    b. loss of use of tangible property which has not been physically injured or destroyed.

15. **RETROACTIVE DATE**—means the date specified in the Declarations. This Coverage Part shall not apply to any **CLAIM** arising from a **WRONGFUL ACT** which occurred prior to this date.

16. **SUBROGATION EXPENSES**—means expenditures including, but not limited to:

    a. all expense of lawyers we are required by law to pay to defend **YOU**;

    b. costs of investigations;

    c. experts;

    d. court costs; and

    other similar expenses **WE** incur in the subrogation process.

17. **TRANSMISSION**—means the transfer or carrying of a condition or disease such as an infectious or inborn disease or an inborn trait from one person or place to another.

18. **WE**, **US** and **OUR**—means the Company providing this insurance.

19. **WRONGFUL ACT(S)**—means any actual or alleged negligent act, error, or omission **YOU** or any person or entity for whom **YOU** are legally responsible commit, but only in the performance of **YOUR PROFESSIONAL SERVICES** for others as stated on the Supplemental Declarations as **NAMED INSURED'S** Profession.

20. **YOU** and **YOUR**—means Insured and includes:

    a. The **NAMED INSURED**.

    b. Any partnership, professional corporation, professional association, limited liability corporation or limited liability partnership including any person:

       (1) Who becomes a partner, stockholder or employee of the **NAMED INSURED** during the

**POLICY PERIOD**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED**.

(2) Who was formerly a partner, stockholder or employee of the **NAMED INSURED** but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED**.

c. Any employee or former employee but only for work done within the scope of their employment for the **NAMED INSURED**.

d. The estate, heirs, executors, administrators, assigns and legal representatives of anyone listed in a., b., or c. above in the event of their death, incapacity, insolvency or bankruptcy, but only to the extent that they would otherwise be provided coverage under this Coverage Part.

19. **YOUR PRODUCT**—means:

a. Any goods or products, manufactured, sold, handled, distributed or disposed of by:

(1) **YOU**;

(2) others trading under **YOUR** name; or

(3) a person or organization whose business or assets **YOU** have acquired; and

b. Containers, material, parts or equipment furnished in connection with such goods or products.

**YOUR PRODUCT** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.

## EXCLUSIONS

This Coverage Part does not apply:

1. to any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACTS** committed by **YOU**;

2. to any **CLAIM** based upon or arising out of **YOUR** capacity as an officer, director, partner, shareholder, public official or employee of a charitable organization; a pension, welfare or profit sharing plan; or a mutual or investment fund or trust or any entity other than the **NAMED INSURED**;

3. to any **CLAIM** arising out of **PROFESSIONAL SERVICES** or advice rendered by **YOU** in connection with any business enterprise not shown on the Declarations;

4. to any **CLAIM** arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause;

5. to any **CLAIM** based on or arising out of discrimination, harassment or misconduct by **YOU**, including but not limited to **CLAIMS** based on an individual's race, creed, color, age, sex, national origin, religion, disability, physical or mental handicap, disease, marital status or sexual preference;

6. to any **CLAIM** made by **YOU** against any other Insured;

7. to any **CLAIM**:

a. for **WRONGFUL ACTS** which would not have occurred in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants; or

b. for any loss, cost or expense arising out of any:

(1) request, demand or order that **YOU** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) **CLAIM** or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed;

8. to any **CLAIM** based on or arising out of **YOUR** capacity as a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments and any regulation or order issued pursuant thereto, or to any other employee benefit plan;

9. to any **CLAIM** based upon or arising out of **PERSONAL INJURY**;

10. to any **CLAIM** based upon or arising out of the liability of others assumed by **YOU** under any contract or agreement, unless such liability would have been covered in the absence of such contract or agreement;

11. to any **CLAIM** based upon or arising out of any insolvency or bankruptcy of **YOU** or any other person or organization in which **YOU** have a financial interest;

12. to any **CLAIM** based upon or arising out of a circumstance for which **YOU** or **YOUR** insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

13. to any **CLAIM** based upon or directly or vicariously arising out of the infringement of a patent, copyright, trademark, trade dress, trade name, service mark, service name, title or slogan;

14. to any **CLAIM** based upon or directly or vicariously arising out of any violation of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended or any Blue Sky or securities law, any similar state or federal statute and any regulation or order issued pursuant to any of the foregoing statutes or regulations;

15. to any **CLAIM** based upon or directly or vicariously arising out of, war, invasion, acts of foreign enemies, hostilities, civil war, rebellion, revolution, insurrection, military or usurped power, confiscation, nationalization, requisition or destruction of or damage to property by or under the order of any government, public or local authority;

16. to any **CLAIM** based upon or arising out of unfair competition, restraint of trade or any other violation of antitrust laws;

17. to any **CLAIM** based upon or directly or vicariously arising out of any gain, profit or advantage to which **YOU** are not legally entitled;

18. to any **CLAIM** based upon or arising out of the breach of express or implied warranty, guarantee or contract including the delay in performance of any contract;

19. to any **CLAIM** arising out of **YOUR PRODUCT**;

20. to **BODILY INJURY** to:

   a. an employee of **YOURS** arising out of and in the course of employment by **YOU**; or

   b. the spouse, child, parent, brother or sister of that employee as a consequence of a. above.

This exclusion applies:

   (1) whether **YOU** are liable as an employer or in any other capacity; and

   (2) to any obligation to share **DAMAGES** with or repay someone else who must pay **DAMAGES** because of the injury;

21. to **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **AUTO** or watercraft owned or operated by or rented or loaned to any of **YOU**. Use includes operation and **LOADING OR UNLOADING**;

22. to **PROPERTY DAMAGE** to:

   a. property **YOU** own, rent or occupy;

   b. premises **YOU** sell, give away or abandon, if the **PROPERTY DAMAGE** arises out of any part of those premises;

   c. property loaned to **YOU**; or

   d. personal property in **YOUR** care, custody or control;

23. to any **CLAIM** based upon or arising out of the rendering or failure to render any services as a physician, surgeon or dentist;

24. to any **CLAIM** based upon or arising out of any cost or expense from the disposal or failure to dispose of health care pathological, infectious or radioactive waste;

25. to any **CLAIM** based upon or arising out of the performances of a criminal act or caused by a person while under the influence of intoxicants or narcotics;

26. to any **CLAIM** based upon or directly or indirectly arising out of:

   a. any infection caused by the transmission, testing or failure to test for the presence of any one or more of the following viruses including any related counseling:

      (1) Human Immunodeficiency Virus and any variations;

      (2) Human T Lymphotropic Virus and any variations; or

      (3) Lymphadenopathy Association Virus; or

   b. the transmission of Acquired Immune Deficiency Syndrome (AIDS) or any AIDS like condition

10

caused as a result of **YOUR PROFESSIONAL SERVICES**.

27. to any **CLAIM** based upon or arising out of the manufacture, distribution, handling, sale, use or existence of latex in any form.

28. to any **CLAIMS** covered under the Commercial General Liability Coverage Part.

## INNOCENT INSURED PROTECTION

Whenever coverage under any provision of this Coverage Part would otherwise be excluded, suspended, or lost because of:

1. **EXCLUSIONS** 1. relating to any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACTS** committed by **YOU**; or

2. concealment of a **CLAIM** by any of **YOU**,

**WE** agree that the coverage as would be afforded by this Coverage Part will apply to each of **YOU** who did not personally commit or participate in the **WRONGFUL ACTS** or agree to the concealment.

For coverage to apply, **YOU** must notify **US** of the **WRONGFUL ACTS** or concealment as soon as **YOU** become aware of them.

## LIMITS OF LIABILITY

Regardless of the number of:

a. **YOU** who are insured under the Coverage Part;

b. all persons or organizations who sustain **DAMAGES** payable under this Coverage Part; and/or

c. suits brought on account of coverage afforded by the Coverage Part,

**OUR** liability is limited as follows:

1. The Limit of Liability stated on the Supplemental Declarations as "Each **CLAIM** Limit" is the limit of **OUR** liability for all **DAMAGES** and **CLAIM EXPENSE** arising out of each **CLAIM** first made and reported in writing during the **POLICY PERIOD** or Extended Reporting Period.

2. The Limit of Liability stated on the Supplemental Declarations as "Annual Aggregate Limit" is subject to the above provision respecting Each **CLAIM** and is the maximum limit of **OUR** liability for each **POLICY PERIOD**. In no event will **OUR** total Limit of Liability be increased by any Extended Reporting Period.

3. **CLAIM EXPENSE** will be subtracted from the Limits of Liability first as it is incurred for each **CLAIM**. The remaining amount will be the amount available to pay **DAMAGES**.

4. Subject to the Limits of Liability, **WE** will only be liable to pay **DAMAGES** and **CLAIM EXPENSE** in excess of the **DEDUCTIBLE** shown in this Coverage Part. **YOUR DEDUCTIBLE** for all **DAMAGES** and **CLAIM EXPENSE** for each **CLAIM** is the **DEDUCTIBLE** Each **CLAIM** amount shown in the Supplemental Declarations. Each of **YOU** under the Coverage Part is individually liable for the payment of the **DEDUCTIBLE**. In the event that **WE** expend funds for **DAMAGES** or **CLAIM EXPENSE** on **YOUR** behalf, **YOU** will reimburse **US** for such expenditures up to the amount of the **DEDUCTIBLE** shown in this Coverage Part. Reimbursement of the **DEDUCTIBLE** will be due within sixty (60) days from the date **WE** bill **YOU**.

5. One or more **CLAIMS** based on or arising out of the same **WRONGFUL ACTS** or a series of related **WRONGFUL ACTS** of one or more of **YOU** will be considered a single **CLAIM**. Unless otherwise endorsed, the **CLAIM** will be subject to the Limit of Liability in effect at the time such **CLAIM** was first reported to **US** in writing. Only one **DEDUCTIBLE** will apply to such **CLAIM**.

## NOTIFICATION

1. If during the **POLICY PERIOD** or the Extended Reporting Period:

a. **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or

b. **YOU** become aware of circumstances which could reasonably be expected to give rise to such notice,

then:

**YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY PERIOD** or Extended Reporting Period. Any subsequent **CLAIM** made against **YOU** arising out of such **WRONGFUL ACT(S)** shall be deemed to have been made during the **POLICY PERIOD** or Extended Reporting Period. No coverage for such **CLAIM** shall exist under any subsequent policy written by **US**. However, if the renewal policy is written by **US**, **YOU** will have sixty

(60) days after the expiration date of this policy to report any **CLAIM** first made during this **POLICY PERIOD**.

2. In the event of any **CLAIM** occurring, written notice to **US** will be given by the **NAMED INSURED** shown in Item 1. of the Declarations. Notice will be deemed to be received if sent by prepaid mail properly addressed to the address shown on the Supplemental Declarations under **NOTICE OF CLAIM**.

3. When **WE** receive **YOUR** written notice and **WE**, at **OUR** discretion, incur **CLAIM EXPENSE** to undertake measures to avoid any **DAMAGES** as a result of the reported **WRONGFUL ACT**, **WE** will waive the applicable **DEDUCTIBLE**.

   However, the **DEDUCTIBLE** will always apply if a suit is filed, if arbitration hearings are begun or if any **DAMAGES** are paid.

## INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT

1. In the event of a **CLAIM**, the **NAMED INSURED** must give **US** written notice of:

   a. the specific **WRONGFUL ACT**; and

   b. the injury or damage which has or may result from the **WRONGFUL ACT**; and

   c. the names and addresses of the claimants or potential claimants; and

   d. the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**.

2. If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

3. **WE** will have full discretion in the handling of any **CLAIM**, and **YOU** will give full information and assistance as **WE** may reasonably require. **YOU** will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, **YOU** will attend hearings, depositions and trials and will assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. **YOU** will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

## EXTENDED REPORTING PERIOD

Only the **NAMED INSURED** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1. One or more Extended Reporting Periods described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY PERIOD** and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

3. In addition, the **NAMED INSURED** may purchase one of the Supplemental Extended Reporting Periods described below if **YOU** are in compliance with the terms and conditions of this policy:

   a. A twelve (12) month Supplemental Extended Reporting Period for one hundred percent (100%) of the full annual premium of this Coverage Part;

   b. A twenty-four (24) month Supplemental Extended Reporting Period for one hundred fifty percent (150%) of the full annual premium of this Coverage Part; or

   c. A thirty-six (36) month Supplemental Extended Reporting Period for one hundred eighty-five percent (185%) of the full annual premium of this Coverage Part.

4. Coverage for a Supplemental Extended Reporting Period must be added by endorsement for which an additional premium charge must be paid. Such period starts sixty (60) days after the end of the **POLICY PERIOD**.

5. The right to purchase a Supplemental Extended Reporting Period will terminate unless:

   a. **WE** receive a written request for a Supplemental Extended Reporting Period; and

   b. the additional premium is paid

   within sixty (60) days of the end of the **POLICY PERIOD**.

*12*

The **NAMED INSURED'S** request must specify the length of the Supplemental Extended Reporting Period desired. Once in effect, Extended Reporting Periods may not be canceled.

6. An Extended Reporting Period does not extend the **POLICY PERIOD** or change the scope of coverage provided. Subject otherwise to the policy's terms, Limits of Liability, exclusions and conditions, the Coverage Part is extended to apply to **CLAIMS** first made against **YOU** and reported to **US** in writing during the Basic Extended Reporting Period or, if purchased, the Supplemental Extended Reporting Period, but only for **CLAIMS** due to **WRONGFUL ACTS** which happened on or after the **RETROACTIVE DATE** and on or before the expiration of the **POLICY PERIOD**.

7. Extended Reporting Periods do not reinstate or increase the Coverage Part's Limits of Liability. **CLAIMS** which are first made and reported during the Basic Extended Reporting Period or the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY PERIOD**.

## CONDITIONS

1. **CANCELLATION.** This policy may be canceled by the **NAMED INSURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancellation is to be effective. **WE** may cancel this policy by mailing to the **NAMED INSURED** at the address shown on the Declarations a written notice stating when the cancellation is to be effective. **WE** will give the **NAMED INSURED** ten (10) days notice for nonpayment of premium or sixty (60) days notice for any other valid reason.

The mailing of notice will be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **POLICY PERIOD**. Delivery of written notice either by the **NAMED INSURED** or by **US** will be equivalent to mailing.

If this policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund will be the customary short rate proportion. **WE** will make the premium refund as soon as practicable after the date of cancellation. However, the premium refund is not a condition of cancellation.

Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU**.

2. **NONRENEWAL.** If **WE** do not renew this policy, **WE** will mail written notice to the **NAMED INSURED** at least sixty (60) days before the end of the **POLICY PERIOD**.

3. **ASSIGNMENT.** Assignment of interest under this policy will not bind **US** unless **WE** endorse the policy in writing assigning **YOUR** interest to another party.

4. **CHANGES.** The terms of this policy will not be waived or changed except by endorsement issued by **US** and made a part of this policy.

5. **MERGERS AND ACQUISITIONS.** All mergers and acquisitions with other firms occurring throughout the **POLICY PERIOD** must be reported to **US** in writing within sixty (60) days of the merger or acquisition, or the next anniversary of this policy, whichever is sooner. **WE** shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger or acquisition.

6. **CONFLICTING STATUTES.** Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.

7. **SUBROGATION CLAUSE. YOU** will transfer to **US YOUR** rights of recovery against any other party for any **DAMAGES WE** have paid on **YOUR** behalf. **YOU** must do everything necessary to secure these rights and do nothing that would jeopardize them.

**WE** will not exercise **OUR** right to recover against any of **YOU** unless the **DAMAGES** result from any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACTS** committed by **YOU**.

Any amount recovered from subrogation shall be apportioned as follows:

Any amount recovered shall first, be used for repayment of **SUBROGATION EXPENSES**; second, to any **DAMAGES** and/or **CLAIM EXPENSE** paid by **US**; third, to any **DAMAGES** and **CLAIM EXPENSE** paid by an excess insurer on **YOUR** behalf; fourth, to any **DAMAGES** and **CLAIM EXPENSE** paid by any other primary insurer on **YOUR** behalf; and last, to repayment of **YOUR DEDUCTIBLE**.

8. **SEVERABILITY CLAUSE.** The application and any supplements or addendums, copies of which are attached to this policy, and the Declarations, are part

*13*

of this policy. They are to be considered as incorporated in and constituting part of this policy. The particulars and statements contained in the application and any supplements or addendums and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of **YOU**. By acceptance of this policy, **YOU** agree that the statements in the application are **YOUR** representations, that they shall be deemed material and that this policy is issued upon the truth of such representations. Nothing in this provision will be construed to increase **OUR** Limits of Liability as set forth in the Declarations.

9. **OTHER INSURANCE.** If **YOU** have other insurance which applies to **CLAIMS** reported under this policy, **WE** will be excess of the amount of the applicable **DEDUCTIBLE** and any other valid and collectible insurance whether such other insurance is primary, pro rata, contributory, excess, contingent or any other basis, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this policy.

If a loss occurs involving two or more policies, each of which provides that its insurance will be excess, then each policy will contribute on a pro rata basis. This means that **WE** will pay no more than **OUR** percentage of the total amount of the insurance covering the **CLAIM**, less the **DEDUCTIBLE**. For example:

The limit of coverage under this policy is $100,000. Another insurance policy with a limit of $300,000 also covers a **CLAIM** covered by this policy. **WE** will not pay more than 25% ($100,000/$400,000) of the **DAMAGES** and **CLAIM EXPENSE**, less the **DEDUCTIBLE**.

10. **ACTION AGAINST US.** No action will lie against **US** unless **YOU** have fully complied with all the terms and Conditions of this policy prior to bringing the action.

11. **INSPECTION AND AUDIT. YOU** agree to allow **US** to examine and audit **YOUR** premises, management procedures and records as they relate to this insurance during normal business hours while this policy is in force. **WE** are not, however, required to make inspections nor will **WE** guarantee that **YOUR** procedures are adequate or that they conform to any laws, rules or regulations.

12. **BANKRUPTCY.** In the event of **YOUR** bankruptcy or insolvency, **WE** will not be relieved of **OUR** obligations under the terms and conditions of this policy.

13. **SOLE AGENT.** By acceptance of this policy, the **NAMED INSURED** agrees to act on **YOUR** behalf with respect to:

    a. exercising the option to purchase an Extended Reporting Period;

    b. the giving and receiving of notice of **CLAIMS** or cancellation;

    c. the payment of premiums that may become due under this policy; and

    d. the payment of **DEDUCTIBLES** that may become due under this policy.

    Each of **YOU** agree that the **NAMED INSURED** will act on **YOUR** behalf.

14. **PREMIUM.** All premiums for this policy shall be computed in accordance with **OUR** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

*14*

# ALLIED HEALTH CARE
## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **YOU** and **YOUR** refer to the **NAMED INSURED** shown in the Declarations, and any other person or organization qualifying as a **NAMED INSURED** under this policy. The words **WE**, **US** and **OUR** refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Certain other words and phrases that are bolded and capitalized have special meaning. Refer to Section **VI** - Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. **WE** will pay **DAMAGES** arising out of **BODILY INJURY** or **PROPERTY DAMAGE** which **YOU** become legally obligated to pay and **CLAIM EXPENSE**. **WE** will have the right and duty to defend the insured against any **SUIT** seeking those **DAMAGES**. However, **WE** will have no duty to defend the insured against any **SUIT** seeking **DAMAGES** for **BODILY INJURY** or **PROPERTY DAMAGE** to which this insurance does not apply. **WE** may, at **OUR** discretion, investigate any **OCCURRENCE** and settle any **CLAIM** or **SUIT** that may result. But:

      (1) The amount **WE** will pay for **DAMAGES** and **CLAIM EXPENSE** is limited as described in Section **III** – Limits Of Insurance; and

      (2) **WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any **SUIT** after the applicable Limits of Insurance have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE** under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to **BODILY INJURY** and **PROPERTY DAMAGE** only if:

      (1) The **BODILY INJURY** or **PROPERTY DAMAGE** is caused by an **OCCURRENCE** that takes place in the **COVERAGE TERRITORY**;

      (2) The **BODILY INJURY** or **PROPERTY DAMAGE** giving rise to the **CLAIM** occurred during the **POLICY PERIOD**; and

      (3) Prior to the **POLICY PERIOD**, no insured listed under paragraph 1. of Section **II** – Who Is An Insured and no **EMPLOYEE** authorized by **YOU** to give or receive notice of an **OCCURRENCE** or **CLAIM**, knew that the **BODILY INJURY** or **PROPERTY DAMAGE** had occurred, in whole or in part. If such a listed insured or authorized **EMPLOYEE** knew, prior to the **POLICY PERIOD**, that the **BODILY INJURY** or **PROPERTY DAMAGE** occurred, then any continuation, change or resumption of such **BODILY INJURY** or **PROPERTY DAMAGE** during or after the **POLICY PERIOD** will be deemed to have been known prior to the **POLICY PERIOD**

15

c. **BODILY INJURY** or **PROPERTY DAMAGE** which occurs during the **POLICY PERIOD** and was not, prior to the **POLICY PERIOD,** known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any **EMPLOYEE** authorized by **YOU** to give or receive notice of an **OCCURRENCE** or **CLAIM,** includes any continuation, change or resumption of that **BODILY INJURY** or **PROPERTY DAMAGE** after the end of the **POLICY PERIOD.**

d. **BODILY INJURY** or **PROPERTY DAMAGE** will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any **EMPLOYEE** authorized by **YOU** to give or receive notice of an **OCCURRENCE** or **CLAIM:**

    **(1)** Reports all, or any part, of the **BODILY INJURY** or **PROPERTY DAMAGE** to **US** or any other insurer;

    **(2)** Receives a written or verbal demand or CLAIM for DAMAGES because of the **BODILY INJURY** or **PROPERTY DAMAGE;** or

    **(3)** Becomes aware by any other means that **BODILY INJURY** or **PROPERTY DAMAGE** has occurred or has begun to occur.

e. **DAMAGES** because of **BODILY INJURY** include **DAMAGES** claimed by any person or organization for care, loss of services or death resulting at any time from the **BODILY INJURY**.

2. **Exclusions**

This Coverage Part does not apply to:

a. **Expected Or Intended Injury**

**BODILY INJURY** or **PROPERTY DAMAGE** expected or intended from the standpoint of the insured. This exclusion does not apply to **BODILY INJURY** resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

**BODILY INJURY** or **PROPERTY DAMAGE** for which the insured is obligated to pay **DAMAGES** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for **DAMAGES:**

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an **INSURED CONTRACT**, provided the **BODILY INJURY** or **PROPERTY DAMAGE** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **INSURED CONTRACT**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be **DAMAGES** because of **BODILY INJURY** or **PROPERTY DAMAGE**, provided:

        **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **INSURED CONTRACT;** and

        **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which **DAMAGES** to which this insurance applies are alleged.

c. **Liquor Liability**

**BODILY INJURY** or **PROPERTY DAMAGE** for which any insured may be held liable by reason of:

    **(1)** Causing or contributing to the intoxication of any person;

    **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if **YOU** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

**BODILY INJURY** to:

    **(1)** An **EMPLOYEE** of the insured arising out of and in the course of:

        **(a)** Employment by the insured; or

*16*

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that **EMPLOYEE** as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share **DAMAGES** with or repay someone else who must pay **DAMAGES** because of the injury.

This exclusion does not apply to liability assumed by the insured under an **INSURED CONTRACT**.

**f. Pollution**

**(1)** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **POLLUTANTS**:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** **BODILY INJURY** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(ii)** **BODILY INJURY** or **PROPERTY DAMAGE** for which **YOU** may be held liable, if **YOU** are a contractor and the owner or lessee of such premises, site or location has been added to **YOUR** policy as an additional insured with respect to **YOUR** ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not or never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke or fumes from a **HOSTILE FIRE**;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom **YOU** may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the **POLLUTANTS** are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **MOBILE EQUIPMENT** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **BODILY INJURY** or **PROPERTY DAMAGE** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

*17*

**(ii) BODILY INJURY** or **PROPERTY DAMAGE** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by **YOU** or on **YOUR** behalf by a contractor or subcontractor; or

**(iii) BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke or fumes from a **HOSTILE FIRE**.

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **POLLUTANTS**.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **POLLUTANTS;** or

**(b) CLAIM** or **SUIT** by or on behalf of a governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **POLLUTANTS**.

However, this paragraph does not apply to liability for **DAMAGES** because of **PROPERTY DAMAGE** that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such **CLAIM** or **SUIT** by or on behalf of a governmental authority.

**g. Aircraft, AUTO Or Watercraft**

**BODILY INJURY** or **PROPERTY DAMAGE** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **AUTO** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **LOADING OR UNLOADING**.

This exclusion applies even if the **CLAIMS** against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **OCCURRENCE** which caused the **BODILY INJURY** or **PROPERTY DAMAGE** involved the ownership, maintenance, use or entrustment to others of any aircraft, **AUTO** or watercraft that is owned by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises **YOU** own or rent;

**(2)** A watercraft **YOU** do not own that is:

**(a)** Less than twenty-six (26) feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an **AUTO** on, or on the ways next to, premises **YOU** own or rent, provided the **AUTO** is not owned by or rented or loaned to **YOU** or the insured;

**(4)** Liability assumed under any **INSURED CONTRACT** for the ownership, maintenance or use of aircraft or watercraft; or

**(5) BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **MOBILE EQUIPMENT** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of **MOBILE EQUIPMENT**.

**h. MOBILE EQUIPMENT**

**BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

**(1)** The transportation of **MOBILE EQUIPMENT** by an **AUTO** owned or operated by or rented or loaned to any insured; or

**(2)** The use of **MOBILE EQUIPMENT** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

*18*

**i. War**

**BODILY INJURY** or **PROPERTY DAMAGE**, however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

**PROPERTY DAMAGE** to:

**(1)** Property **YOU** own, rent, or occupy, including any costs or expenses incurred by **YOU**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises **YOU** sell, give away or abandon, if the **PROPERTY DAMAGE** arises out of any part of those premises;

**(3)** Property loaned to **YOU**;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which **YOU** or any contractors or subcontractors working directly or indirectly on **YOUR** behalf are performing operations, if the **PROPERTY DAMAGE** arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because **YOUR WORK** was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to **PROPERTY DAMAGE** (other than damage by fire) to premises, including the contents of such premises, rented to **YOU** for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To **YOU** as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are **YOUR WORK** and were never occupied, rented or held for rental by **YOU**.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

**k. Damage To YOUR PRODUCT**

**PROPERTY DAMAGE** to **YOUR PRODUCT** arising out of it or any part of it.

**l. Damage To YOUR WORK**

**PROPERTY DAMAGE** to **YOUR WORK** arising out of it or any part of it and included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **YOUR** behalf by a subcontractor.

**m. Damage To IMPAIRED PROPERTY Or Property Not Physically Injured**

**PROPERTY DAMAGE** to **IMPAIRED PROPERTY** or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in **YOUR PRODUCT** or **YOUR WORK**; or

**(2)** A delay or failure by **YOU** or anyone acting on **YOUR** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **YOUR PRODUCT** or **YOUR WORK** after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

**DAMAGES** claimed for any loss, cost or expense incurred by **YOU** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1) YOUR PRODUCT**;

**(2) YOUR WORK**; or

19

**(3) IMPAIRED PROPERTY;**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. PERSONAL AND ADVERTISING INJURY**

**BODILY INJURY** arising out of **PERSONAL AND ADVERTISING INJURY**.

**p. Electronic Data**

**DAMAGES** arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Nuclear Energy Liability**

Any **CLAIM** arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause.

**r. Professional**

**BODILY INJURY** or **PROPERTY DAMAGE** due to the rendering or failure to render any professional service.

**s. Lead Contamination**

**OCCURRENCES** at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any of **YOU**; or from **YOUR** operations, which result in:

**(1) BODILY INJURY** arising out of the ingestion, inhalation or absorption of lead in any form;

**(2) PROPERTY DAMAGE** arising from any form of lead; or

**(3)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any of **YOU** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

**(b) CLAIM** or **SUIT** by or on behalf of any governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**t. SEXUAL MISCONDUCT**

**BODILY INJURY** to any person arising out of **SEXUAL MISCONDUCT**.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a. WE** will pay **DAMAGES** arising out of **PERSONAL AND ADVERTISING INJURY** which **YOU** become legally obligated to pay and **CLAIM EXPENSE. WE** will have the right and duty to defend the insured against any **SUIT** seeking those **DAMAGES**. However, **WE** will have no duty to defend the insured against any **SUIT** seeking **DAMAGES** for **PERSONAL AND ADVERTISING INJURY** to which this insurance does not apply. **WE** may, at **OUR** discretion, investigate any offense and settle any **CLAIM** or **SUIT** that may result. But:

**(1)** The amount **WE** will pay for **DAMAGES** and **CLAIM EXPENSE** is limited as described in Section **III** – Limits Of Insurance; and

**(2) WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any **SUIT** after the applicable Limits of Insurance have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE** under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to **PERSONAL AND ADVERTISING INJURY** caused by an offense arising out of **YOUR** business, but only if the offense was committed in the COVERAGE TERRITORY durng the POLICY PERIOD.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

**PERSONAL AND ADVERTISING INJURY** caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict **PERSONAL AND ADVERTISING INJURY**.

**b. Material Published With Knowledge Of Falsity**

**PERSONAL AND ADVERTISING INJURY** arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To POLICY PERIOD**

**PERSONAL AND ADVERTISING INJURY** arising out of oral or written publication of material whose first publication took place before the beginning of the **POLICY PERIOD** shown in the Declarations.

**d. Criminal Acts**

**PERSONAL AND ADVERTISING INJURY** arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

**PERSONAL AND ADVERTISING INJURY** for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for **DAMAGES** that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

**PERSONAL AND ADVERTISING INJURY** arising out of a breach of contract, except an implied contract to use another's advertising idea in **YOUR ADVERTISEMENT**.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

**PERSONAL AND ADVERTISING INJURY** arising out of the failure of goods, products or services to conform with any statement of quality or performance made in **YOUR ADVERTISEMENT**.

**h. Wrong Description Of Prices**

**PERSONAL AND ADVERTISING INJURY** arising out of the wrong description of the price of goods, products or services stated in **YOUR ADVERTISEMENT**.

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

**PERSONAL AND ADVERTISING INJURY** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in **YOUR ADVERTISEMENT**, of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

**PERSONAL AND ADVERTISING INJURY** committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content or web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17.a., b.** and **c.** of **PERSONAL AND ADVERTISING INJURY** under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for **YOU** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

**PERSONAL AND ADVERTISING INJURY** arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

**PERSONAL AND ADVERTISING INJURY** arising out of the unauthorized use of another's name or product in **YOUR** e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

**PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **POLLUTANTS** at any time.

21

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **POLLUTANTS**; or

**(2)** **CLAIM** or **SUIT** by or on behalf of a governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **POLLUTANTS**.

**o. War**

**PERSONAL AND ADVERTISING INJURY**, however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Nuclear Energy Liability**

Any **CLAIM** arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause.

**q. Professional**

**PERSONAL AND ADVERTISING INJURY** due to the rendering or failure to render any professional service.

**r. Lead Contamination**

**OCCURRENCES** at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any of **YOU**; or from **YOUR** operations, which result in:

**(1)** **PERSONAL AND ADVERTISING INJURY** arising from any form of lead; or

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any of **YOU** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

**(b)** **CLAIM** or **SUIT** by or on behalf of any governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**s. SEXUAL MISCONDUCT**

**PERSONAL AND ADVERTISING INJURY** arising out of **SEXUAL MISCONDUCT**.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** **WE** will pay medical expenses as described below for **BODILY INJURY** caused by an accident:

**(1)** On premises **YOU** own or rent;

**(2)** On ways next to premises **YOU** own or rent; or

**(3)** Because of **YOUR** operations;

provided that:

**(1)** The accident takes place in the **COVERAGE TERRITORY** and during the **POLICY PERIOD**;

**(2)** The expenses are incurred and reported to **US** within one year of the date of the accident; and

**(3)** The injured person submits to examination, at **OUR** expense, by physicians of **OUR** choice as often as **WE** reasonably require.

**b.** **WE** will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. **WE** will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

**WE** will not pay expenses for **BODILY INJURY**:

### a. Any Insured

To any insured.

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises **YOU** own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an **EMPLOYEE** of any insured, if benefits for the **BODILY INJURY** are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. PRODUCTS-COMPLETED OPERATIONS HAZARD

Included within the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

### g. Coverage A Exclusions

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**WE** will pay, in addition to **OUR** Limits of Insurance:

1. All costs taxed against **YOU** in any **SUIT WE** defend.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. **WE** do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. **WE** do not have to furnish these bonds.

4. Up to $200 to each of **YOU** for each day or part of the day for **YOUR** attendance at a trial, hearing, arbitration proceeding, mediation or any other Alternative Dispute Resolutions at which **WE** request **YOUR** attendance. The maximum amount payable by **US** during the **POLICY PERIOD** shall not exceed $5,000 in the aggregate.

5. Prejudgment interest awarded against the insured on that part of the judgment **WE** pay. If **WE** make an offer to pay the applicable limit of insurance, **WE** will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before **WE** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

## SECTION II – WHO IS AN INSURED

1. If **YOU** are designated in the Declarations as:

   a. An individual, **YOU** and **YOUR** spouse are insureds, but only with respect to the conduct of a business of which **YOU** are the sole owner.

   b. A partnership or joint venture, **YOU** are an insured. **YOUR** members, **YOUR** partners, and their spouses are also insureds, but only with respect to the conduct of **YOUR** business.

   c. A limited liability company, **YOU** are an insured. **YOUR** members are also insureds, but only with respect to the conduct of **YOUR** business. **YOUR** managers are insureds, but only with respect to their duties as **YOUR** managers.

   d. An organization other than a partnership, joint venture or limited liability company, **YOU** are an insured. **YOUR EXECUTIVE OFFICERS** and directors are insureds, but only with respect to their duties as **YOUR** officers or directors. **YOUR** stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, **YOU** are an insured. **YOUR** trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

23

**a. YOUR EMPLOYEES**, other than either **YOUR EXECUTIVE OFFICERS** (if **YOU** are an organization other than a partnership, joint venture or limited liability company) or **YOUR** managers (if **YOU** are a limited liability company), but only for acts within the scope of their employment by **YOU** or while performing duties related to the conduct of **YOUR** business. However, none of these **EMPLOYEES** are insured for:

**(1) BODILY INJURY** or **PERSONAL AND ADVERTISING INJURY**:

**(a)** To **YOU**, to **YOUR** partners or members (if **YOU** are a partnership or joint venture), to **YOUR** members (if **YOU** are a limited liability company), to a co-**EMPLOYEE** while in the course of his or her employment or performing duties related to the conduct of **YOUR** business;

**(b)** To the spouse, child, parent, brother or sister of that co-**EMPLOYEE** as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share **DAMAGES** with or repay someone else who must pay **DAMAGES** because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2) PROPERTY DAMAGE** to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

**YOU**, any of **YOUR EMPLOYEES**, any partner or member (if **YOU** are a partnership or joint venture), or any member (if **YOU** are a limited liability company).

**b.** Any person (other than **YOUR EMPLOYEE**) or any organization while acting as **YOUR** real estate manager.

**c.** Any person or organization having proper temporary custody of **YOUR** property if **YOU** die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until **YOUR** legal representative has been appointed.

**d. YOUR** legal representative if **YOU** die, but only with respect to duties as such. That representative will have all **YOUR** rights and duties under this Coverage Part.

**3.** Any organization **YOU** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **YOU** maintain ownership or majority interest, will qualify as a **NAMED INSURED** if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after **YOU** acquire or form the organization or the end of the **POLICY PERIOD**, whichever is earlier;

**b.** Coverage **A** does not apply to **BODILY INJURY** or **PROPERTY DAMAGE** that occurred before **YOU** acquired or formed the organization; and

**c.** Coverage **B** does not apply to **PERSONAL AND ADVERTISING INJURY** arising out of an offense committed before **YOU** acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **NAMED INSURED** in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most **WE** will pay regardless of the number of:

**a.** Insureds;

**b. CLAIMS** made or **SUITS** brought; or

**c.** Persons or organizations making **CLAIMS** or bringing **SUITS**.

**2.** The General Aggregate Limit is the most **WE** will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b. DAMAGES** and **CLAIM EXPENSE** under Coverage **A**, including **DAMAGES** and **CLAIM EXPENSE** because of **BODILY INJURY** or **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**; and

24

c. **DAMAGES** and **CLAIM EXPENSE** under Coverage **B**.

3. Subject to **2.** above, the Personal and Advertising Injury Limit is the most **WE** will pay under Coverage **B** for the sum of all **DAMAGES** and **CLAIM EXPENSE** because of all **PERSONAL AND ADVERTISING INJURY** sustained by any one person or organization.

4. Subject to **2.**, the Each **CLAIM** Limit is the most **WE** will pay for the sum of:

   a. **DAMAGES** and **CLAIM EXPENSE** under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all **BODILY INJURY** and **PROPERTY DAMAGE** arising out of any one **OCCURRENCE**.

5. Subject to **4.** above, the Damage To Premises Rented To **YOU** Limit is the most **WE** will pay under Coverage **A** for **DAMAGES** and **CLAIM EXPENSE** because of **PROPERTY DAMAGE** to any one premises, while rented to **YOU**, or in the case of damage by fire, while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner.

6. Subject to **4.** above, the Medical Expense Limit is the most **WE** will pay under Coverage **C** for all medical expenses because of **BODILY INJURY** sustained by any one person.

7. **CLAIM EXPENSE** will be subtracted from the Limits of Insurance first as it is incurred for each **CLAIM**. The remaining amount will be the amount available to pay **DAMAGES**.

8. One or more **CLAIMS** based on or arising out of the same **OCCURRENCE** or a series of related **OCCURRENCES** caused by one or more of **YOU** will be considered a single **CLAIM**. Unless otherwise endorsed, the **CLAIM** will be subject to the Limit of Insurance in effect at the time such **CLAIM** was reported to **US** in writing.

9. One or more **CLAIMS** based on or arising out of the same **PERSONAL OR ADVERTISING INJURY** offense or a series of related offenses committed by one or more of **YOU** will be considered a single **CLAIM**. Unless otherwise endorsed, the **CLAIM** will be subject to the Limit of Insurance in effect at the time such **CLAIM** was reported to **US** in writing.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the **POLICY PERIOD** shown in the Declarations, unless the **POLICY PERIOD** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **CANCELLATION.** This policy may be canceled by the **NAMED INSURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancellation is to be effective. **WE** may cancel this policy by mailing to the **NAMED INSURED** at the address shown on the Declarations a written notice stating when the cancellation is to be effective. **WE** will give the **NAMED INSURED** ten (10) days notice for nonpayment of premium or sixty (60) days notice for any other valid reason.

   The mailing of notice will be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **POLICY PERIOD**. Delivery of written notice either by the **NAMED INSURED** or by **US** will be equivalent to mailing.

   If this policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund will be the customary short rate proportion. **WE** will make the premium refund as soon as practicable after the date of cancellation. However, the premium refund is not a condition of cancellation.

   Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU**.

2. **NONRENEWAL.** If **WE** do not renew this policy, **WE** will mail written notice to the **NAMED INSURED** at least sixty (60) days before the end of the **POLICY PERIOD**.

3. **ASSIGNMENT.** Assignment of interest under this policy will not bind **US** unless **WE** endorse the policy in writing assigning **YOUR** interest to another party.

4. **CHANGES.** The terms of this policy will not be waived or changed except by endorsement issued by **US** and made a part of this policy.

5. **MERGERS AND ACQUISITIONS.** All mergers and acquisitions with other firms occurring throughout the **POLICY PERIOD** must be reported to **US** in writing

25

within sixty (60) days of the merger or acquisition, or the next anniversary of this policy, whichever is sooner. **WE** shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger or acquisition.

6. **CONFLICTING STATUTES.** Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.

7. **SUBROGATION CLAUSE. YOU** will transfer to **US YOUR** rights of recovery against any other party for any **DAMAGES WE** have paid on **YOUR** behalf. **YOU** must do everything necessary to secure these rights and do nothing that would jeopardize them.

   **WE** will not exercise **OUR** right to recover against any of **YOU** unless the **DAMAGES** result from any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACTS** committed by **YOU**.

   Any amount recovered from subrogation shall be apportioned as follows:

   Any amount recovered shall first, be used for repayment of **SUBROGATION EXPENSES**; second, to any **DAMAGES** and/or **CLAIM EXPENSE** paid by **US**; third, to any **DAMAGES** and **CLAIM EXPENSE** paid by an excess insurer on **YOUR** behalf; and last, to any **DAMAGES** and **CLAIM EXPENSE** paid by any other primary insurer on **YOUR** behalf.

8. **SEVERABILITY CLAUSE.** The application and any supplements or addendums, copies of which are attached to this policy, and the Declarations, are part of this policy. They are to be considered as incorporated in and constituting part of this policy. The particulars and statements contained in the application and any supplements or addendums and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of **YOU**. By acceptance of this policy, **YOU** agree that the statements in the application are **YOUR** representations, that they shall be deemed material and that this policy is issued upon the truth of such representations. Nothing in this provision will be construed to increase **OUR** Limits of Liability as set forth in the Declarations.

9. **OTHER INSURANCE.** If **YOU** have other insurance which applies to **CLAIMS** reported under this policy, **WE** will be excess of the amount of the applicable deductible and any other valid and collectible insurance whether such other insurance is primary, pro rata, contributory, excess, contingent or any other basis, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this policy.

If a loss occurs involving two or more policies, each of which provides that its insurance will be excess, then each policy will contribute on a pro rata basis. This means that **WE** will pay no more than **OUR** percentage of the total amount of the insurance covering the **CLAIM**, less any applicable deductible. For example:

The limit of coverage under this policy is $100,000. Another insurance policy with a limit of $300,000 also covers a **CLAIM** covered by this policy. **WE** will not pay more than 25% ($100,000/$400,000) of the **DAMAGES** and **CLAIM EXPENSE**, less any applicable deductible.

10. **ACTION AGAINST US.** No action will lie against **US** unless **YOU** have fully complied with all the terms and Conditions of this policy prior to bringing the action.

11. **INSPECTION AND AUDIT. YOU** agree to allow **US** to examine and audit **YOUR** premises, management procedures and records as they relate to this insurance during normal business hours while this policy is in force. **WE** are not, however, required to make inspections nor will **WE** guarantee that **YOUR** procedures are adequate or that they conform to any laws, rules or regulations.

12. **BANKRUPTCY.** In the event of **YOUR** bankruptcy or insolvency, **WE** will not be relieved of **OUR** obligations under the terms and conditions of this policy.

13. **SOLE AGENT.** By acceptance of this policy, the **NAMED INSURED** agrees to act on **YOUR** behalf with respect to:

    a. the giving and receiving of notice of **CLAIMS** or cancellation;

    b. the payment of premiums that may become due under this policy; and

    c. the payment of deductibles that may become due under this policy.

    Each of **YOU** agree that the **NAMED INSURED** will act on **YOUR** behalf.

14. **PREMIUM.** All premiums for this policy shall be computed in accordance with **OUR** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

26

## 15. INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT.

a. In the event of a **CLAIM** and in compliance with Section **I** – Coverages **A**, Paragraph **1.c. Notification** and Coverages **B**, Paragraph **1.c. Notification**, the **NAMED INSURED** must give **US** written notice of:

(1) the specific **BODILY INJURY** or **PROPERTY DAMAGE OCCURRENCE** or **PERSONAL AND ADVERTISING INJURY** offense; and

(2) the injury or damage which has or may result from the **BODILY INJURY** or **PROPERTY DAMAGE OCCURRENCE** or **PERSONAL AND ADVERTISING INJURY** offense; and

(3) the names and addresses of the claimants or potential claimants; and

(4) the circumstances by which **YOU** first became aware of such **BODILY INJURY** or **PROPERTY DAMAGE OCCURRENCE** or **PERSONAL AND ADVERTISING INJURY** offense.

b. If a **CLAIM** is made or **SUIT** is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

c. **WE** will have full discretion in the handling of any **CLAIM**, and **YOU** will give full information and assistance as **WE** may reasonably require. **YOU** will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, **YOU** will attend hearings, depositions and trials and will assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. **YOU** will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

## 16. YOUR RIGHT TO CLAIM AND OCCURRENCE INFORMATION.

**WE** will provide the first **NAMED INSURED** shown in the Declarations the following information relating to this and any preceding general liability Claims Made Coverage Part **WE** have issued to **YOU** during the previous three years:

a. A list or other record of each **OCCURRENCE**, not previously reported to any other insurer, of which **WE** were notified in accordance with Paragraph 15.a. of the Section **IV** – **INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT** Condition. **WE** will include the date and brief description of the **OCCURRENCE** if that information was in the notice **WE** received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on **OUR** judgment. They are subject to change and should not be regarded as ultimate settlement values.

**YOU** must not disclose this information to any claimant or any claimant's representative without **OUR** consent.

If **WE** cancel or elect not to renew this Coverage Part, **WE** will provide such information no later than thirty (30) days before the date of policy termination. In other circumstances, **WE** will provide this information only if **WE** receive a written request from the first **NAMED INSURED** within sixty (60) days after the end of the **POLICY PERIOD**. In this case, **WE** will provide this information within forty-five (45) days of receipt of the request.

**WE** compile **CLAIM** and **OCCURRENCE** information for **OUR** own business purposes and exercise reasonable care in doing so. In providing this information to the first **NAMED INSURED**, **WE** make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if **WE** inadvertently provide inaccurate information.

## SECTION VI – DEFINITIONS

1. **ADVERTISEMENT** means a notice that is broadcast or published to the general public or specific market segments about **YOUR** goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about **YOUR** goods, products or services for the purposes of attracting customers or supporters is considered an **ADVERTISEMENT**.

27

2. **AUTO** means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, **AUTO** does not include **MOBILE EQUIPMENT**.

3. **BODILY INJURY** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **CLAIM(S)** means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **BODILY INJURY, PROPERTY DAMAGE** or **PERSONAL AND ADVERTISING INJURY**. **CLAIM(S)** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice. Notice includes, but is not limited to, service of suit, institution of arbitration proceedings, mediation or any other Alternative Dispute Resolutions.

5. **CLAIM EXPENSE** means expenditures including, but not limited to:

   a. All expense of lawyers **WE** are required by law to pay to defend **YOU**;

   b. Costs of investigations;

   c. Experts;

   d. Court costs; and

   e. Other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or **SUIT**.

   **CLAIM EXPENSE** does not include:

   (1) Salary, charges or expenses of **OUR** regular employees.

   (2) Payments made under the Supplementary Payments provision of this Coverage Part.

6. **COVERAGE TERRITORY** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by **YOU** in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on **YOUR** business; or

      (3) **PERSONAL AND ADVERTISING INJURY** offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay **DAMAGES** is determined in a **SUIT** on the merits, in the territory described in **a.** above or in a settlement **WE** agree to.

7. **DAMAGES** means a monetary judgment, award or settlement.

   **DAMAGES** do not include:

   a. Civil or criminal fines, sanctions, restitution or penalties, whether pursuant to any civil or criminal law or statute;

   b. Amounts paid to **YOU** as fees, costs or expenses for services performed which are to be reimbursed or discharged as part of the judgment or settlement;

   c. Equitable relief, injunctive relief, declaratory relief or any other relief or recovery that is not seeking monetary judgment, award or settlement;

   d. Any fees, costs or expenses, including but not limited to claimant/plaintiff attorney fees, related to equitable relief, injunctive relieve, declaratory relief or any other relief or recovery that is not seeking a monetary judgment, award or settlement;

   e. Judgments or awards arising from acts deemed uninsurable by law; or

   f. Fines, penalties or disputes over fees, deposits, commissions, or charges for goods or services or the cost of correcting, performing or repeating professional services by **YOU** when **YOU** had the capability to correct, perform or repeat the services that generated the cost.

8. **EMPLOYEE** includes a **LEASED WORKER**. **EMPLOYEE** does not include a **TEMPORARY WORKER**.

9. **EXECUTIVE OFFICER** means a person holding any of the officer positions created by **YOUR** charter, constitution, by-laws or any other similar governing document.

10. **HOSTILE FIRE** means one which becomes uncontrollable or breaks out from where it was intended to be.

11. **IMPAIRED PROPERTY** means tangible property, other than **YOUR PRODUCT** or **YOUR WORK**, that cannot be used or is less useful because:

   a. It incorporates **YOUR PRODUCT** or **YOUR WORK** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. **YOU** have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of **YOUR PRODUCT** or **YOUR WORK**; or

   b. **YOUR** fulfilling the terms of the contract or agreement.

12. **INSURED CONTRACT** means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner is not an **INSURED CONTRACT**;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to **YOUR** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **YOU** assume the tort liability of another party to pay for **BODILY INJURY** or **PROPERTY DAMAGE** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for **BODILY INJURY** or **PROPERTY DAMAGE** arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

13. **LEASED WORKER** means a person leased to **YOU** by a labor leasing firm under an agreement between **YOU** and the labor leasing firm, to perform duties related to the conduct of **YOUR** business. **LEASED WORKER** does not include a **TEMPORARY WORKER**.

14. **LOADING OR UNLOADING** means the handling of property or persons:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **AUTO**;

   b. While it is in or on an aircraft, watercraft or **AUTO**; or

   c. While it is being moved from an aircraft, watercraft or **AUTO** to the place where it is finally delivered;

15. **MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises **YOU** own or rent;

29

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **MOBILE EQUIPMENT** but will be considered **AUTOS:**

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **MOBILE EQUIPMENT** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **AUTOS**.

**16. OCCURRENCE** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17. PERSONAL AND ADVERTISING INJURY** means injury, including consequential **BODILY INJURY**, arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in **YOUR ADVERTISEMENT**; or

**g.** Infringing upon another's copyright, trade dress or slogan in **YOUR ADVERTISEMENT**.

**18. POLICY PERIOD** means the period of time stated in Item 2. of the Declarations or any shorter period resulting from policy cancellation.

**19. POLLUTANTS** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**20. PRODUCTS-COMPLETED OPERATIONS HAZARD:**

**a.** Includes all **BODILY INJURY** and **PROPERTY DAMAGE** occurring away from premises **YOU** own or rent and arising out of **YOUR PRODUCT** or **YOUR WORK** except:

    **(1)** Products that are still in **YOUR** physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, **YOUR WORK** will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in **YOUR** contract has been completed.

30

**(b)** When all of the work to be done at the job site has been completed if **YOUR** contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by **YOU**, and that condition was created by the **LOADING OR UNLOADING** of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**21. PROPERTY DAMAGE** means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **OCCURRENCE** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**22. SEXUAL MISCONDUCT** means any action or behavior, or any physical contact or touching. Which is intended to lead to, or which culminates in any sexual act, by or against any client, patient, or any other person whose care, custody, treatment or supervision has been entrusted to the **NAMED INSURED**, whether committed by, caused by, or contributed to by an insured or which is caused by or contributed to by the failure of any insured to:

**a.** properly train, hire, supervise, discipline or terminate any **EMPLOYEE**;

**b.** properly control, monitor or supervise the treatment or actions of any client, patient or other person whose care or custody has been entrusted to the **NAMED INSURED**;

**c.** properly place with or remove from care, custody, treatment or supervision of a third party any client, patient or other person; or

**d.** properly or fully inform any person or entity of the background, prior history or propensity of any individual whose care, custody, treatment or supervision has been entrusted the **NAMED INSURED** or to a third party at the request or based on the advice of the **NAMED INSURED**.

**23. SUBROGATION EXPENSES** means expenditures including, but not limited to:

**a.** All expense of lawyers **WE** are required by law to pay to defend **YOU**;

**b.** Costs of investigations;

**c.** Experts;

**d.** Court costs; and

**e.** Other similar expenses **WE** incur in the subrogation process.

**24. SUIT** means a civil proceeding in which **DAMAGES** because of **BODILY INJURY**, **PROPERTY DAMAGE** or **PERSONAL AND ADVERTISING INJURY** to which this insurance applies are alleged. **SUIT** includes:

**a.** An arbitration proceeding in which such **DAMAGES** are claimed and to which the insured must submit or does submit with **OUR** consent; or

**b.** Any other alternative dispute resolution proceeding in which such **DAMAGES** are claimed and to which the insured submits with **OUR** consent.

31

**25. TEMPORARY WORKER** means a person who is furnished to **YOU** to substitute for a permanent **EMPLOYEE** on leave or to meet seasonal or short-term workload conditions.

**26. YOUR PRODUCT:**

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** **YOU**;

         **(b)** Others trading under **YOUR** name; or

         **(c)** A person or organization whose business or assets **YOU** have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **YOUR PRODUCT**; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**27. YOUR WORK:**

   **a.** Means:

      **(1)** Work or operations performed by **YOU** or on **YOUR** behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **YOUR WORK** and

      **(2)** The providing of or failure to provide warnings or instructions.

32

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

LSW 1001 (Insurance) 08/94

33

# LLOYD'S PRIVACY POLICY STATEMENT

## UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

## INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

## INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

## CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

## <u>RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION</u>

**You have a right to request access to or correction of your personal information that is in our possession.**

## CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.

06/03
LSW1135B

34

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this Contract of Insurance. This Insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than **30** days thereafter, the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the customary short rate proportion of any Minimum Premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the pro rata proportion of any Minimum Premium stipulated herein whichever is the greater.

Payment or tender of any Unearned Premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

20/4/61
NMA1331

35

## U.S.A. RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

## PHYSICAL DAMAGE - DIRECT

This Policy does not cover any loss or damage arising directly or indirectly from Nuclear Reaction, Nuclear Radiation or Radioactive Contamination, however, such Nuclear Reaction, Nuclear Radiation or Radioactive Contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from Nuclear Reaction, Nuclear Radiation or Radioactive Contamination, any loss or damage arising directly from that Fire shall (subject to the Provisions of this Policy) be covered EXCLUDING however all loss or damage caused by Nuclear Reaction, Nuclear Radiation or Radioactive Contamination arising directly or indirectly from that Fire.

*    N.B.    If Fire is not an insured peril under this Policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA 1191

36

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:-

Mendes and Mount
750 Seventh Avenue
New York
New York 10019-6829
United States of America

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86
NMA1998

37

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEDUCTIBLE ENDORSEMENT

### SCHEDULE

| Amount of Deductible | Coverage |
|---|---|
| $2,500. Each **CLAIM** | Coverages A and B |

Subject to the Limits of Insurance stated in Coverages **A** and **B**, **WE** will only be liable to pay **DAMAGES** and **CLAIM EXPENSE** in excess of the **DEDUCTIBLE** shown in the schedule above for Each **CLAIM**. Each of **YOU** under the Coverage Part is individually liable for the payment of the **DEDUCTIBLE**. In the event that **WE** expend funds for **DAMAGES** or **CLAIM EXPENSE** on **YOUR** behalf, **YOU** will reimburse **US** for such expenditures up to the amount of the **DEDUCTIBLE** shown in the schedule above. Reimbursement of the **DEDUCTIBLE** will be due within sixty (60) days from the date **WE** bill **YOU**.

Paragraphs **8.** and **9.** of Section III—Limits of Insurance are deleted in their entirety and are replaced by the following:

8. One or more **CLAIMS** based on or arising out of the same **OCCURRENCE** or a series of related **OCCURRENCES** caused by one or more of **YOU** will be considered a single **CLAIM**. Unless otherwise endorsed, the **CLAIM** will be subject to the Limit of Insurance in effect at the time such **CLAIM** was reported to **US** in writing. Only one **DEDUCTIBLE** will apply to such **CLAIM**.

9. One or more **CLAIMS** based on or arising out of the same **PERSONAL OR ADVERTISING INJURY** offense or a series of related offenses committed by one or more of **YOU** will be considered a single **CLAIM**. Unless otherwise endorsed, the **CLAIM** will be subject to the Limit of Insurance in effect at the time such **CLAIM** was reported to **US** in writing. Only one **DEDUCTIBLE** will apply to such **CLAIM**.

The following definition is added to Section **VI**—Definitions:

**DEDUCTIBLE** means the amount **YOU** must pay for **DAMAGES** and/or **CLAIM EXPENSE**.

I/We hereby understand, acknowledge and accept the terms of this endorsement. (Signature is not required if attached at the original inception date of policy.)

38

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOADING OR UNLOADING DEFINITION AMENDMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTH CARE COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Definition 14. **LOADING OR UNLOADING** of **SECTION VI—DEFINITIONS** of the Coverage Part is deleted in its entirety and is replaced by the following:

14. **LOADING OR UNLOADING** means the handling of property or persons:

   a. While being moved from the place where such property or persons are accepted for movement into or onto an aircraft, watercraft or **AUTO;**

   b. While in or on an aircraft, watercraft or **AUTO;** or

   c. While being moved from an aircraft, watercraft or **AUTO** to the place where such property or persons are finally delivered.

I/We hereby understand, acknowledge and accept the terms of this endorsement. (Signature is not required if attached at the original inception date of policy.)

_____    _____
SIGNATURE OF PARTNER, OFFICER OR SOLE PROPRIETOR          DATE

_____
TYPE NAME OF PARTNER, OFFICER OR SOLE PROPRIETOR

39

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HIPAA SUBLIMIT

In consideration of the premium charged, it is agreed that the Policy is amended as follows.

1.  The definition of **Wrongful Act** in the **DEFINITIONS** section is deleted in its entirety and replaced with the following:

    **Wrongful Act** means any negligent act or error or omission of any **Insured** or any other person for whose acts, errors or omissions the **Insured** is legally liable, arising out of the conduct of **Professional Services**, including alleged violations of **HIPAA**.

2.  **LIMIT OF LIABILITY,**

    a.  The total Limit of Liability of the **Company** for **Damages** and **Claim Expenses** as the result of any one **Claim** shall not exceed the amount specified in the Professional Liability Declarations, provided however, the Limit of Liability for any one **Claim** alleging violations of **HIPAA** shall be $100,000. The Limit of Liability for any one **Claim** alleging violations of HIPAA shall be a part of and not in addition to the Limit of Liability shown in the Professional Liability Declarations.

    b.  The total Aggregate Limit of Liability of the **Company** for **Damages** and **Claim Expenses** for all **Claims** afforded coverage by this Policy shall not exceed the amount specified in the Professional Liability Declarations, provided however, the total Aggregate Limit of Liability for all **Claims** alleging violations of **HIPAA** shall be $100,000. The total Aggregate Limit of Liability for all **Claims** alleging violations of **HIPAA** shall be a part of and not in addition to the Limit of Liability shown in the Professional Liability Declarations.

3.  For purposes of this Endorsement **HIPAA** means the Health Insurance Portability and Accountability Act of 1996, any rules or regulations issued pursuant thereto, any amendments or replacements thereof, and any other similar law.

Nothing contained herein shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

PGI PL 039 0109



# Schedule of Locations

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| | | 14120 Pacific Hwy, S, Seattle, WA 98168<br>3803 S. Warren St., Seattle, WA 98118 | |

41

In consideration of the premium charged, it is hereby understood and agreed that the Company shall not be liable to make any payments for Damages or Claim Expenses in connection with any Claim arising out of or resulting from transportation/package delivery services rendered or which should have been rendered to the general public. This Exclusion shall not apply to Non-Emergency Medical Transportation Services (NEMT) provided to others for a fee. NEMT as used herein is defined as: Transportation to a Medical Assistance reimbursable service for the purpose of receiving treatment, medical evaluations, or purchasing prescription drugs or medical equipment.

All other Policy Terms and Conditions remain unchanged.

42

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

06/02/03
NMA2962

43

# WAR AND CIVIL WAR EXCLUSION CLAUSE

(Approved by Lloyd's Underwriters' Non-Marine Association)

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

1/1/38
NMA 464

44

# ELECTRONIC DATA ENDORSEMENT

1) **Electronic Data Exclusion**

   Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

   a)   This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

   ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

   COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

   b)   However, in the event that a peril listed below results from any of the matters described in paragraph (a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

   **Listed Perils**

   Fire
   Explosion

2) **Electronic Data Processing Media Valuation**

   Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

   Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the ELECTRONIC DATA from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

25/01/01
NMA 2915

45

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction:

   (a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component,

46

solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

47

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEXUAL MISCONDUCT LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### ALLIED HEALTH CARE PROFESSIONAL LIABILITY POLICY

The policy is amended as follows:

1. The policy is extended to provide limited coverage under the **INSURING AGREEMENT** section of the policy when there is an allegation of **SEXUAL MISCONDUCT**. A **CLAIM** or suit involving any allegation of **SEXUAL MISCONDUCT** is not subject to the Each **CLAIM** Limit of Liability or the Annual Aggregate Limit of Liability shown on the Declarations. A **CLAIM** or suit involving any allegation of **SEXUAL MISCONDUCT** is, instead, subject to the reduced Limits of Liability set forth in paragraph 2. of this endorsement, which apply regardless of the number of insureds, **CLAIMS** or suits brought, or person(s) or organization(s) making **CLAIMS** or bringing suits.

2. The following sublimits of liability shall apply with regard to the coverage provided by this endorsement:

| SUBLIMITS OF LIABILITY | |
|---|---|
| Each **CLAIM** Limit | $1,000,000. |
| Aggregate Limit | $2,000,000. |

3. In the event **SEXUAL MISCONDUCT** is alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same, related, continuing or repeated acts of **SEXUAL MISCONDUCT**, whether or not in the course of the professional treatment and/or relationships, shall be subject to the same Each **CLAIM** sublimit of liability set forth in this endorsement and shall be subject to all other provisions of this endorsement.

   The sublimits of liability stated in this endorsement shall be part of, and not in addition to, the Limits of Liability shown on the Declarations.

   **WE** shall not be obligated to undertake or defend any suit or proceeding which is subject to the sublimits stated in this endorsement after the applicable sublimit of liability has been exhausted by the payment of **DAMAGES**.

4. The following is added to the **LIMITS OF LIABILITY** section of the policy:

   The sublimit of liability for Each **CLAIM**, as shown in this endorsement, is the most **WE** will pay as **DAMAGES** and **CLAIM EXPENSE** for any one **CLAIM** arising from actual or alleged **SEXUAL MISCONDUCT**. The Aggregate limit, as shown in this endorsement, is the most **WE** will pay for all **CLAIMS** in any one **POLICY PERIOD** arising from actual or alleged **SEXUAL MISCONDUCT**.

5. Paragraph 5. of the **LIMITS OF LIABILITY** section of the policy is deleted in its entirety and is replaced by the following:

   5. A **CLAIM** or **CLAIMS** by one or more claimants against one or more of **YOU** arising out of the same actual or alleged **WRONGFUL ACT**, or related, continuing or repeated **WRONGFUL ACTS**, including, but not limited to, acts of **SEXUAL MISCONDUCT**, shall be deemed to be a single **CLAIM** and shall be deemed to have been made when the first of such **CLAIMS** is made. Any actual or alleged related, continuing or repeated **WRONGFUL ACTS**, including, but not limited to, **SEXUAL MISCONDUCT**, shall be deemed to have been committed when the first of any such actual or alleged **WRONGFUL ACTS** were committed.

6. The following is added to the **DEFINITIONS** section of the policy:

   **SEXUAL MISCONDUCT**—means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, by or against any client, patient, or any other per-

son whose care, custody, treatment or supervision has been entrusted to the **NAMED INSURED**, whether committed by, caused by, or contributed to by an insured or which is caused by or contributed to by the failure of any insured to:

a.  properly train, hire, supervise, discipline or terminate any employee;

b.  properly control, monitor or supervise the treatment or actions of any client, patient or other person whose care or custody has been entrusted to the **NAMED INSURED**;

c.  properly place with or remove from care, custody, treatment or supervision of a third party of any client, patient or other person; or

d.  properly or fully inform any person or entity of the background, prior history or propensity of any individual whose care, custody, treatment or supervision has been entrusted to the **NAMED INSURED** or to a third party at the request or based on the advice of the **NAMED INSURED**.

49

<u>U.S.A. & CANADA</u>

## LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

## SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:-

a) any loss, damage, cost or expense, or
b) any increase in insured loss, damage, cost or expense, or
c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):-

a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

## DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:-

1. In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also

has been entrusted to the **NAMED INSURED**, whether committed by, caused by, or contributed to by an insured or which is caused by or contributed to by the failure of any insured to:

a. properly train, hire, supervise, discipline or terminate any employee;

b. properly control, monitor or supervise the treatment or actions of any client, patient or other person whose care or custody has been entrusted to the **NAMED INSURED**;

c. properly place with or remove from care, custody, treatment or supervision of a third party of any client, patient or other person; or

d. properly or fully inform any person or entity of the background, prior history or propensity of any individual whose care, custody, treatment or supervision has been entrusted to the **NAMED INSURED** or to a third party at the request or based on the advice of the **NAMED INSURED**.

51

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)      war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)      any act of terrorism.
       For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

52

## Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**LMA3100**
15 September 2010

53

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATION OF SURPLUS LINES AGENT

This endorsement modifies insurance provided under the following:

It is agreed that the Surplus Lines Agent with respect to this policy is as follows:

<u>Surplus Lines Agency</u>

Griffin Underwriting Services - Bellevue

*54*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**AMENDATORY ENDORSEMENT**

**TCPA EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that the insurance provided by this Policy does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of the following:

1. The Telephone Consumer Protection Act (TCPA), including any amendment or addition to such law;
2. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment or addition to such law;
3. The Fair Credit Reporting Act (FCRA), including any amendment or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);
4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information; or
5. Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

In addition, this insurance does not apply to **Claims** asserted under the common law which are alleged to arise out of the distribution, publication, sending or transmission of material or information via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

All other policy Terms and Conditions remain unchanged.

PGI PL 074 1212

*55*

# AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PRIMARY ADDITIONAL INSUREDS

In consideration of the premium charged, it is agreed that the insurance provided by this Policy is extended to include Hopelink, DSHS, the University of Washington, Harborview Medical Center and their respective officers, directors, elected and appointed officials, employees, representatives, agents and volunteers (hereinafter: **Primary Additional Insureds**), with respect to activities performed or operations conducted by **YOU** and/or **YOUR** employees, so that to the full extent of such insurance, the **Primary Additional Insureds** shall be insured against claims, risks, and losses in connection with any activity performed or operations conducted by **YOU** and/or **YOUR** employees. It is further agreed that any other insurance applicable or available to the **Primary Additional Insureds** shall be non-contributory, except in the case of any **Gross Negligence** of any **Primary Additional Insureds**. Provided however, in no event shall this Amendatory Endorsement be considered an extension of coverage for insurance not otherwise afforded by this Policy, nor is it for limits of liability in excess of the applicable Limits of Liability and/or Limits of Insurance of this Policy.

The term **Gross Negligence** as used herein is the conscious and voluntary disregard of the need to use reasonable care, which is likely to cause foreseeable grave injury or harm to persons or property, or both.

Nothing contained herein shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

All other Policy Terms and Conditions remain unchanged.

PGI PL 063 0109

56

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

**ALLIED HEALTH/COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

## SCHEDULE

| Limits Of Insurance | | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | 500,000. | Each Accident |
| Bodily Injury By Disease | $ | 500,000. | Aggregate Limit |
| Bodily Injury By Disease | $ | 500,000. | Each Employee |
| | | | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. The following is added to Section I – Coverages:

**COVERAGE – STOP GAP – EMPLOYERS LIABILITY**

    **1. Insuring Agreement**

        a. We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

            (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

            (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

        b. This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

            (1) The:

                (a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

                (b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

                (c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

            (2) The:

                (a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

*57*

(b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

(1) For:

(a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

(b) Care and loss of services; and

(c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

### f. Termination, Coercion Or Discrimination

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

### g. Failure To Comply With "Workers Compensation Law"

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1) Deprived of common law defenses; or

(2) Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

### h. Violation Of Age Laws Or Employment Of Minors

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1) Knowingly employed by you in violation of any law as to age; or

(2) Under the age of 14 years, regardless of any such law.

### i. Federal Laws

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1) The Federal Employer's Liability Act (45 USC Section 51-60);

(2) The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8) Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9) Any subsequent amendments to the laws listed above.

### j. Punitive Damages

Multiple, exemplary or punitive damages.

### k. Crew Members

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The Supplementary Payments provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages A and B.

C. For the purposes of this endorsement, Section II – Who Is An Insured, is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, Section III – Limits Of Insurance, is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. For the purposes of this endorsement, Condition 2. – Duties In The Event Of Occurrence, Claim Or Suit of the Conditions Section IV is deleted and replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

a. You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

(5) Do nothing after an injury occurs that would interfere with our right to recover from others.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, Paragraph 4.of the Definitions Section is replaced by the following:

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

60

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the Definitions Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

**PGI PL 063  0109**

*les*

**✗ PGI COMMERCIAL**

701 Route 73S., Bldg. #2, Suite 105
Marlton, NJ 08053
Phone: (856) 797-3096
Fax: (856) 797-9007

## APPLICATION FOR EMERGENCY MEDICAL TECHNICIANS

1. Complete Legal Name of Applicant (if other than parent firm, supply full details of ownership entity): (Use an additional sheet of paper if necessary) Universal Transportation & Translations Inc
   DBA UTL and CNG For Hire
   Address: 14120 Pac.F.c Hwy 5
   City: Seattle    State: WA    Zip: 98168
   Contact Name: ABDUL    Title: Owner
   Phone: 206 57-2600 Web site Address: ____    Fax: 206 722-3689
   FEIN: ____    Owner On Site?................................................................................ ☐ Yes ☐ No
   List all other locations: (Use an additional sheet of paper if necessary)
   3803 S Warren ST, Seattle WA 98118

2. In what state is the applicant domiciled? WASH

3. In what state(s) do you operate? WASH

4. Are any services provided outside of the United States? .......................................................... ☐ Yes ☒ No
   If "Yes," please explain, including what countries, what types of services are provided and what percentage of your revenues are derived from these services:

5. Applicant is:
   a) ☐ Individual   ☐ Partnership   ☒ Corporation   ☐ Professional Association   ☐ Other: ____
   b) ☐ Not For Profit   ☒ For Profit   ☐ Both
   c) ☐ Public Ambulance service—city or county owned   ☐ Fire dept./rescue squad   ☐ Hospital owned

6. Is the company accredited? ................................................................................................ ☐ Yes ☒ No
   If "Yes," by whom? ____

7. Is the firm engaged in, owned by, associated with or controlled by any other business? ...................... ☐ Yes ☐ No
   If "Yes," give details: (Use an additional sheet of paper if necessary) UTEL and CNG For Hire
   Only both DBA's of UTLL INC

8. Date established: Nov 2006

9. Does the applicant own (wholly or in part), operate or administer any other business or other institution
   where medical services are customarily rendered? ............................................................... ☐ Yes ☒ No
   If "Yes," give details: ____

10. Limits of Liability desired for Professional Liability.
    ☐ $1,000,000/$1,000,000   ☒ $1,000,000/$2,000,000   ☐ $1,000,000/$3,000,000
    Deductible desired:
    ☐ $2,500   ☒ $5,000   ☐ $10,000   ☐ $25,000   ☐ $50,000   ☐ Other ____
    MAXIMUM AND MINIMUM DEDUCTIBLES WILL BE SUBJECT TO UNDERWRITING APPROVAL

Page 1 of 9

62

11. Effective date desired: _____ 2-2-3-/3

12. Please list the individual shareholders or partners of the facility: ABDISALAM YUSEF,
Rashead Ahmed
Please include Resumes and/or CV's for all key personnel, Principals, Executives, and/or Administrators with your submission.

13. Name of Medical Director, If any: _____
Please include Resumes and/or CV's for all Medical Directors with your submission.
Is coverage provided for the Medical Director under any other insurance policy? ........................... .......... ☐ Yes ☐ No
If "Yes," please provide proof of Medical Malpractice/Professional Liability insurance.

14. Does the applicant anticipate any expansions within the next year? ............................................... .... ☐ Yes ☐ No
If "Yes," please describe: _____
_____

15 PROFESSIONAL ACTIVITIES AND SPECIALTY

| Check All Services Provided | Percentage of Total Call Volume | |
|---|---|---|
| ☐ BLS (Basic Life Support) | 0 | % |
| ☐ ALS (Advanced Life Support) | 0 | % |
| ☐ First Responder | 0 | % |
| ☐ Ambulet (wheelchair) Service | 0 | % |
| ☐ Wheelchair Transports | 0 | % |
| ☐ Ambulatory—sedan | 0 | % |
| ☐ Air Ambulance operations* | 0 | % |
| ☐ Special Event EMS | 0 | % |
| ☐ Water rescue/offshore operations* | 0 | % |
| ☒ Other (describe): NON Emergency medical transportation only | | |

*If you indicated a percentage for these, please advise if your company owns or leases any airplanes, helicopters, boats or other all/water transportation vehicles? .................................................... ☐ Yes ☐ No
If "Yes," describe number and type: _____

16. Radius of Operation:
☐ 0—25 miles ............................................................................................................................. _____%
☒ 25—50 miles ........................................................................................................................... _____%
☐ over 50 miles .......................................................................................................................... _____%
☐ over 100 miles ........................................................................................................................ _____%

17 Total number of ambulances: _____ 0 _____ wheelchair vans w/lifts: _____ 4 _____
vans w/out lifts _____ (2) _____ Private Passenger: 32 ; _____ Other: _____

Page 2 of 9

63

18. Total number of calls per year: _Dispatched Calls_
What percentage of total calls are:

- ☐ 911 .......................................................................................................... %
- ☐ Emergency ............................................................................................. %
- ☐ Non-Emergency ..................................................................................... %
- ☐ Non-Medical .................................................................................... _100_ %

(Please describe types of destinations): _____

19. Does the company contract services, personnel and/or vehicles to other transportation companies/providers on an independent contractor basis? ......................................... ☐ Yes ☑ No
If "Yes," please describe: _____

20. a. Gross annual revenues: _500,000  To  600,000_

b. Percentage of gross revenues from your largest client? ......................................... _85_ %
Please include with your submission, a copy of your contract with this (your largest) client.

21. Do you have a positive net worth? .................................................................. ☑ Yes ☐ No

22. Do you have sufficient working capital? ........................................................... ☑ Yes ☐ No

23. State percentage of revenues derived from:

| Source | Percentage Last Policy Year | Estimated Percentage for Current Year |
|---|---|---|
| A. Charitable Contributions | 0 % | % |
| B. Government Funding | % | % |
| C. Fee For Service | 15 % | % |
| D. Other: _Hopelink_ | 85 % | % |

Please include a copy of your most current financial statement with your submission.

24. Population of Area Served: _King County_
Types of Entities served by Percentage of Total Calls:

- ☐ Nursing Homes ...................................................................................... %
- ☐ Physicians Offices ................................................................................. %
- ☐ Clinics (MH/MR) .................................................................................... %
- ☐ Counties ............................................................................................... %
- ☐ Psychiatric Hospitals* ........................................................................... %
- ☐ Medical Hospitals .................................................................................. %
- ☐ Rehabilitation ....................................................................................... %
- ☑ Other .............................................................................................. _85_ %

Please describe: _Hopelink_

*If Psychiatric patients are transported, does the company have a written patient handling policy? ......... ☑ Yes ☐ No
If "Yes," please attach a copy.

25. List any local, state or federal entities that inspect your operations: _Hopelink_
How often are inspections held? _Semi-Annual_
Please include a copy of your company's latest inspection report.

64

26. Have you ever been cited or investigated for a violation of a local, state or federal regulation? .................. ☐ Yes ☑ No
If "Yes," please explain: _____

27. Number of Employees, Contractors and Volunteers by type:

| Type | Employee | | Independent Contractor | | Volunteer | |
|---|---|---|---|---|---|---|
| | Full Time | Part Time | Full Time | Part Time | Full Time | Part Time |
| EMT's | | | | | | |
| Paramedics | — | | | | | |
| Nurses | — | | | | | |
| Clerical | — | | | | | |
| WC Van Drivers | — | | | | | |
| Dispatchers | — | | | | | |
| Other (describe): DRIVER S | 3 | 1 | | | | |
| Total | | | 34 | 6 | 0 | 0 |

28. Are all the above individuals licensed in accordance with applicable state and federal regulations? ........ ☑ Yes ☐ No
If "No," attach an explanation.

29. Are any EMT's or Paramedics trained in specialized services? DON'T HAVE EMT'S _____ ☐ Yes ☑ No
If "Yes," please describe: _____ OR PARAMEDICS

30. Is anesthesia used? ................................................................................................................ ☐ Yes ☑ No
If "Yes," please answer a. through d. below:
a. Type of anesthesia used: _____
b. Who administers? _____
c. What monitoring equipment is used for administration? _____
d. Is there crash cart equipment on board the transport unit? ................................ ☐ Yes ☐ No

31. Indicate the number of hours your employees/contractors/volunteers:
a. work per shift: ___ 8 - 12 ___
b. are off duty between shifts: _____

32. Do your employees work more than one shift per day? ................................................ ☐ Yes ☐ No

33. Who dispatches your calls? ☐ 911 ☑ In-house by your own employees/volunteers ☐ Outside sources
a. If outside, please describe: _____
b. If in-house, is previous dispatching experience required? ........................ ☑ Yes ☐ No

34. Does your company provide dispatch service to others? ........................................... ☐ Yes ☑ No

35. Are incoming calls taped? ...................................................................................... ☑ Yes ☐ No

36. Is a call report completed on every call, and every time an ambulance is requested? .............. ☑ Yes ☐ No

37. How often are your call reports reviewed for completeness, legibility and professional content? ___ WEEKLY ___

65

## 38. HIRING PRACTICES

Do you:

1. Check Driving records upon hire? ............................................................................ ☑ Yes ☐ No
2. Require signed applications on all prospective employees? ......................................... ☑ Yes ☐ No
   Please include a copy of your employment application with this submission.
3. Verify all professions' qualifications, licenses and certifications? ................................ ☑ Yes ☐ No
4. Conduct a personal interview with prospective employees and non-employees (Contractors & Volunteers)? ............................................................................................................ ☑ Yes ☐ No
5. Require professional and personal references on each employee? ................................. ☑ Yes ☐ No
6. Conduct a Criminal Background Check on each employee? ......................................... ☑ Yes ☐ No
7. Provide training and orientation for new employees? .................................................. ☑ Yes ☐ No
8. Perform pre-employment physicals? ........................................................................ ☑ Yes ☐ No
9. Verify any pending license/certification suspensions or revocations or any pending disciplinary actions by other facilities? .............................................................................................. ☐ Yes ☑ No
10. Ask if there have been any professional liability or work-related claims made against the applicant in the past? ............................................................................................................... ☑ Yes ☐ No
11. Have written job descriptions? ................................................................................ ☑ Yes ☐ No
12. Require drug/alcohol screening? .............................................................................. ☑ Yes ☐ No

## 39. INTERNAL PROCEDURES

Do you:

1. Review reported incidents with the personnel involved? .............................................. ☑ Yes ☐ No
2. Impose consequences on personnel for at fault incidents? .......................................... ☑ Yes ☐ No
3. Require signed release forms from patients refusing treatment? .................................. ☑ Yes ☐ No
4. Monitor certificates and continuing education? ......................................................... ☑ Yes ☐ No
5. Routinely monitor reporting/charting? ....................................................................... ☑ Yes ☐ No
6. Use a standard incident reporting form? ................................................................... ☑ Yes ☐ No
   If "Yes," please include a copy with this submission.
7. Keep medical records along with the standard incident reporting form? ....................... ☑ Yes ☐ No

## 40. RISK MANAGEMENT/LOSS CONTROL

Do you:

1. Have a formal Safety/Loss Control Program? ............................................................ ☑ Yes ☐ No
2. Conduct routine checks on medication inventories? ................................................... ☑ Yes ☐ No
3. Check motor vehicle records annually? ..................................................................... ☑ Yes ☐ No
4. Have qualified personnel inspect and maintain the equipment/supplies on a regular basis? ........ ☑ Yes ☐ No
5. Practice universal precautions? ............................................................................... ☑ Yes ☐ No
6. Perform random drug/alcohol screening? ................................................................. ☑ Yes ☐ No
7. Require continuing education for your employees? ..................................................... ☑ Yes ☐ No
8. Have written procedures for safe patient handling? ................................................... ☑ Yes ☐ No
9. Have all emergency vehicles equipped with the first aid supplies per state mandate? ........ ☑ Yes ☐ No
10. Have a written procedure for proper disposal of contaminated medical waste? ............. ☐ Yes ☐ No

606

**GENERAL LIABILITY**

41.  Is coverage for general liability desired? ........................................................................................ ☒ Yes ☐ No

If you answered "Yes," please answer questions a. through h.

If you answered "No," please skip to question 42.

a.  Complete the following for any owned or leased premises (use a separate sheet of paper if needed):

| Location Address | | Occupancy | Square Footage |
|---|---|---|---|
| 12120 Pacific Hwy S  Ste N/a 98168 | | ☐ Owned  ☒ Leased | 1,000 |
| 3803 S W/AESAL) S.  Ste N/a 98118 | | ☐ Owned  ☒ Leased | 2,000 |
| | | ☐ Owned  ☐ Leased | |

b.  Are you required to name your landlord or any other business as an additional insured? .................. ☒ Yes ☐ No

(If "Yes," please list name and address of each and state type of interest. Use separate sheet if needed.)

| Name | Address | Interest |
|---|---|---|
| | | |
| | | |

c.  Do you supply or sell any medical supplies or equipment to patients or clients? ........................... ☐ Yes ☒ No

d.  Do you sponsor any sporting/social events? ............................................................................ ☐ Yes ☒ No

e.  Have any operations been sold, acquired or discontinued in the past five (5) years? .................... ☐ Yes ☒ No

f.  Is machinery, equipment or vehicles loaned or rented to others? ................................................ ☐ Yes ☒ No

g.  Where are vehicles stored when not in use? ............................................................................. ☐ Yes ☒ No

h.  Do you perform any other activities or services for which you have other coverage or do not require coverage under this policy?

If "Yes," please describe: .............................................................................................. ☐ Yes ☒ No

**42. FLEET INFORMATION**

a.  Does your company have a formal maintenance program for your vehicles? .............................. ☒ Yes ☐ No

b.  Do drivers inspect vehicles prior to their shift? ....................................................................... ☒ Yes ☐ No

c.  Describe the maintenance of your vehicles: .............................................................................

d.  Is service performed by your own mechanic? ........................................................................... ☒ Yes ☐ No

If "No," please provide the name of the entity which provides service: _____

e.  Total number of vehicles in fleet per policy year for past five (5) years:

| Current Year | Last Year | Third Year | Fourth Year | Fifth Year |
|---|---|---|---|---|
| | | | | |

f.  Does your company utilize any fifteen (15) passenger vans? ..................................................... ☐ Yes ☒ No

If "Yes," is instruction in rollover hazards and avoidance techniques given to drivers? ......... ☐ Yes ☐ No

g.  Does your company have an in-house Driver Training Program? ................................................ ☐ Yes ☒ No

If "Yes," what is the course name? _____

If "Yes," provide:

1)  Copies of any training manual

2)  Qualifications of your instructor

If "No," do you use other Driver Training Programs (i.e. EVOC, IEMS)? ................................. ☒ Yes ☐ No

If "Yes," list name(s) of courses used: _____

Page 8 of 9

67

h. How often are employees required to take the course? _____ Time

i. Does your state require driver training for EMT or Paramedic Certification? _____ ☐ Yes ☑ No

   If "Yes," how often? _____

j. Are drivers trained on wheelchair patient restraint? _____ ☑ Yes ☐ No

   If "Yes," please describe: _____

k. Do you allow passengers in vehicles that are not patients or employees? _____ ☐ Yes ☑ No

   If "Yes," who do you allow and under what circumstances? _____

## INSURANCE AND CLAIM INFORMATION

43. Do you currently carry Professional Liability Insurance? _____ ☑ Yes ☐ No

List the Professional Liability Insurance carried by the firm for each of the past five (5) years including the current year and include periods of no coverage.

| Policy Period From MM/DD/YY | To MM/DD/YY | Insurance Company | Limit Of Liability | Deductible | Claims Made or Occurrence | Premium |
|---|---|---|---|---|---|---|
| 2 23 12 | 2 23 13 | Lloyds / London | 1,000,000 | 1,000 | oc a | 3600 |
| 10 25 11 | 2 23 12 | Scottsdale | 1,000,000 | a | occ | 15 00 |
| 10 25 10 | 10 25 11 | Scottsdale | 1,000,000 | a | occ | 15 00 |
| 10 25 09 | 10 25 10 | Scottsdale | 1,000,000 | a | oa a | 12 00 |
| 10 25 08 | 10 25 09 | Scottsdale | 1,000,000 | a | aca | 15 00 |

If coverage is Claims Made, what is the Retroactive Date/Prior Date on your current policy? _____

If coverage was Claims Made, was tail coverage purchased under the previous policy? _____ ☐ Yes ☐ No

44. Do you currently carry General Liability Insurance? _____ ☑ Yes ☐ No

If "Yes," please list the Commercial General Liability Insurance currently carried by the firm:

| Policy Period From MM/DD/YY | To MM/DD/YY | Insurance Company | Limit Of Liability | Deductible | Claims Made or Occurrence | Premium |
|---|---|---|---|---|---|---|
| 2 23 12 | 2 23 13 | Lloyds / London | 1,000,000 | 1,000 | occ | 3600 |

If coverage is Claims Made, what is the Retroactive Date/Prior Acts Date on your current policy? _____

If coverage was Claims Made, was tail coverage purchased under the previous policy? _____ ☐ Yes ☐ No

45. Has any procedure, service or person been self-insured or excluded from any previous policy? _____ ☐ Yes ☑ No

If "Yes," please describe: _____

Please provide currently valued loss runs for the past five (5) years from the above insurance carriers.

## 46. CLAIMS HISTORY

a. Have there been any Professional Liability claims or Incidents or General Liability claims or incidents made against you, any employee or former employee, the Applicant or anyone proposed for this insurance, in the last five (5) years? _____ ☐ Yes ☐ No

   If "Yes," how many? _____

   If "Yes," please complete a Claim/Circumstances Supplement for each.

68

b. Are you or anyone proposed for this insurance aware of any facts or circumstances which might give rise to a Professional Liability claim or complaint or a General Liability claim or complaint?.................. ☐ Yes ☒ No

If "Yes," how many? _____

If "Yes," please complete a Claim/Circumstances Supplement for each.

c. Are you or anyone proposed for this insurance aware of any charges, inquiries, investigations, grievances or other administrative hearings in the last five (5) years or currently?................................... ☐ Yes ☒ No

If "Yes," how many? _____

If "Yes" to any, please complete a Claim/Circumstances/Administrative Hearings Supplement for each.

d. Was prior Professional Liability coverage or General Liability coverage ever cancelled or nonrenewed? (OTHER THAN BEING NONRENEWED DUE TO THE CARRIER NO LONGER WRITING COVERAGES) (NOT APPLICABLE TO MISSOURI APPLICANTS)................................... ☐ Yes ☒ No

If "Yes," please explain the reason for nonrenewal or cancellation: _____

_____

NOTE: THE APPLICANT UNDERSTANDS AND AGREES THAT IF ANY FACTS, INCIDENTS OR CIRCUMSTANCES EXIST WHICH MAY REASONABLY GIVE RISE TO A CLAIM UNDER THIS PROPOSED POLICY, THEN ANY CLAIMS ARISING FROM SUCH FACTS, INCIDENTS OR CIRCUMSTANCES ARE EXCLUDED FROM COVERAGE.

The following information must be included with your submission:

1. MOST CURRENT FINANCIAL STATEMENT

2. CURRENTLY VALUED LOSS RUNS FOR THE PAST FIVE YEARS

3. FULLY COMPLETED CLAIM SUPPLEMENTS FOR ALL CLAIMS IN THE PAST FIVE (5) YEARS

4. RESUME/S/CV'S FOR ALL KEY PERSONNEL, PRINCIPALS, EXECUTIVES, MEDICAL DIRECTORS AND/OR ADMINISTRATORS

5. PROOF OF MEDICAL MALPRACTICE/PROFESSIONAL INSURANCE FOR ANY EMPLOYEES OR CONTRACTORS WHO MAINTAIN THEIR OWN COVERAGE

6. COPY OF A SAMPLE CLIENT CONTRACT

Please include any of the following information with your submission which may apply:

1. COPY OF YOUR EMPLOYMENT APPLICATION

2. COPY OF ANY ADVERTISING BROCHURES OR ADVERTISEMENTS

3. YOUR COMPANY'S LATEST INSPECTION REPORT

4. COPY OF YOUR WRITTEN PATIENT HANDLING POLICY

5. COPY OF YOUR STANDARD INCIDENT REPORTING FORM

6. COPY(IES) OF ANY IN-HOUSE DRIVER TRAINING PROGRAM MANUALS AND INSTRUCTOR'S QUALIFICATIONS

## SIGNATURE SECTION AND OTHER INFORMATION

**NOTE:** please recheck all answers and sign below. Coverage cannot be bound without signature or if this application is incomplete.

THE UNDERSIGNED REPRESENTS TO THE BEST OF HIS OR HER BELIEF AND KNOWLEDGE, AFTER REASONABLE INQUIRY AND DUE DILIGENCE, THE STATEMENTS SET FORTH IN THIS APPLICATION AND ANY SUPPLEMENTS THERETO ARE TRUE AND CORRECT.

THE UNDERSIGNED DECLARES THAT ANY CLAIM, INCIDENT OR CIRCUMSTANCE TAKING PLACE PRIOR TO THE EFFECTIVE DATE OF THE INSURANCE APPLIED FOR WILL IMMEDIATELY BE REPORTED IN WRITING TO THE INSURER. AS A RESULT, THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATION OR AGREEMENT TO BIND THE INSURANCE.

THE SIGNING OF THIS APPLICATION DOES NOT BIND THE UNDERSIGNED TO PURCHASE THE INSURANCE, NOR DOES THE REVIEW OF THIS APPLICATION BIND THE INSURANCE COMPANY TO ISSUE A POLICY.

THE APPLICANT UNDERSTANDS AND AGREES THIS APPLICATION AND ANY SUPPLEMENTS THERETO SHALL BE INCORPORATED INTO ANY POLICY THAT MAY BE ISSUED AND THE UNDERWRITERS ARE RELYING ON THE TRUTH OF THE STATEMENTS SET FORTH HEREIN IN MAKING A DETERMINATION TO ISSUE ANY POLICY. THE APPLICANT ALSO UNDERSTANDS AND AGREES THIS APPLICATION FOR COVERAGE DOES NOT MEAN ANY REQUESTED COVERAGES, LIMITS OR DEDUCTIBLES SHALL BE GRANTED; IN FACT, UNDERWRITERS MUST AGREE TO ANY REQUESTS WHETHER IN THE APPLICATION OR OTHERWISE.

THE UNDERSIGNED INDIVIDUAL REPRESENTS HE OR SHE IS DULY AUTHORIZED AND EMPOWERED TO MAKE THIS APPLICATION, INCLUDING THE REPRESENTATION, ON BEHALF OF THE APPLICANT OR ANY INDIVIDUAL WHO MAY SEEK COVERAGE UNDER ANY BINDER OR INSURANCE POLICY ISSUED IN RELIANCE HEREON.

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**APPLICABLE IN THE STATE OF NEW YORK:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONTAINING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

_____ _____
Name of Applicant

_____ DBA NTET
Signature and Title of Principal (must be owner, partner or officer)   DBA CNG Fek Hire

_____ _____
Print Name and Title of Principal Signing Above   Date

Page 8 of 9

70